Delmer E. Davis, et al., Plaintiffs-Appellees, v. City of Rockford, a Municipal Corporation, Defendant-Appellant.

Gen. No. 64–120.

Second District.

June 11, 1965.

Lawrence J. Ferolie, of Rockford, for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford (Ralph S. Zahm and Armour T. Beckstrand, of counsel), for appellees.

ABRAHAMSON, P. J.

This is an appeal by the defendant, City of Rockford, from a declaratory judgment holding the city's zoning ordinance unreasonable and void as to plaintiff's land.

The plaintiffs are three different groups of people owning seven adjoining lots on the west side of Alpine Road in the Scarsdale Subdivision in Rockford. The Lindbecks own Lot 71 on the northwest corner of Alpine and Tonawanda Avenue and have lived in the home located thereon since 1950. Mr. and Mrs. David Corey own Lots 69 and 70 immediately north of and adjoining Lindbeck and live in the home they constructed on Lot 70 in 1941. Lot 69, and the adjoining Lots 68, 67, 66 and 65, owned by the Davis family, are vacant. The entire area was annexed into the City of Rockford in 1960 and these seven lots were zoned "C" Residential in accordance with a city-wide zoning plan

whereby Alpine and Tonawanda were to serve as the East and South boundaries, respectively, of a residential area.

Directly across Alpine Road from the subject property is the Colonial Village Shopping Center, a 20-acre complex of retail businesses of considerable size, that is in the process of further development. On the south side of Tonawanda Avenue, the property is zoned, and apparently used, for local business. A block and a half south of the property is a well-developed center of local business activity known as "Five-Points." Alpine Road is a heavily-traveled four-lane highway on which 10,000 cars regularly pass each day.

The property immediately west and north of the subject lots in Scarsdale Subdivision is zoned "A" (single family) residential. "C" Residential permits some uses in addition to single family residence such as hospitals, clubhouses and boardinghouses. These seven lots were to serve as a "buffer" between the shopping center and the residential community to the west. However, most of the property within a two-block radius that is zoned residential remains vacant. Kenmore Avenue, the next street west of Alpine and directly behind the subject lots, is vacant on both sides of the street.

Both Lindbeck and Corey testified that because of the business development in the area, their homes were no longer desirable or suitable for residential purposes. The heavy traffic, noise and bright lights from the Shopping Center, which stay on until 1:00 a. m. every night of the week, have all contributed to their discomfort. Both home owners had listed their property for sale with local realtors for the last two years and received no offers for residential purposes. However, the Humble Oil Company did offer $23,500 to Lindbeck and $26,500 to Corey if the property could be

re-zoned to permit the construction and operation of a service station . The Davises acquired their four vacant lots recently, intending to relocate their automobile agency, including showrooms and service area, to the lots if they could obtain the necessary zoning change.

Petitions brought by the plaintiffs for rezoning to permit the use of the property for a service station and automobile agency were denied by the local Zoning Board of Appeals and that decision was affirmed by the City Council. The plaintiffs then filed a suit for declaratory judgment in the Circuit Court of Winnebago County alleging that the zoning ordinances, as they affected their property, were void because of violation of constitutional safeguards against deprivation of property without due process of law and because they were arbitrary and did not bear a reasonable relationship with the public health, safety or welfare. The trial court, at the conclusion of the evidence, held for the plaintiffs and entered a decree holding the zoning ordinance unreasonable and void as to these lots and then spelling out, in some detail,. how the plaintiffs could proceed, permitting the business use sought. This appeal followed.

Zoning experts and real estate brokers familiar with the area testified for both sides of the controversy. A zoning expert testifying for the plaintiffs stated that as presently zoned, the lots with the improvements, are worth approximately $35,700; whereas, if rezoned, they would be worth $98,200. While there was some dispute as to probable worth, both with and without the rezoning desired, between the various experts who testified, they were all in agreement that these seven lots would be worth considerably more if rezoned for business use and that such would be their so-called "highest and best use." A witness for the city stated that while the rezoning would probably

slightly diminish the value of the surrounding lots for residential purposes, that such a diminution had already occurred because of the general build-up of business in the area.

While the city admits that this is the case, they urge that the loss to the individual owners is more than overcome by the overriding interest of the community in general. Their city-planner testified that these lots were intended to serve as a "buffer" against further business encroachment into a residential area and that Alpine Road and Tonawanda Avenue were logical and valid lines to locate the boundaries between business and residential development. The city also strongly contends that to permit the business use of the lots decreed by the trial court would be injurious to the health and safety of the community by contributing to the already existing traffic problem on Alpine Road. Testimony was introduced showing that Alpine Road crests near the location of these lots, limiting the visibility of vehicles entering onto it at this point.

■ As has often been pointed out, zoning cases must be determined on the particular facts and circumstances of each case taking into consideration the character of the neighborhood, the general zoning pattern of the community, the decrease in property values, and the benefit to the community as compared with the hardship on the individual owners. People ex rel. Chicago Title & Trust Co. v. Reiter, 25 Ill2d 41, 182 NE2d 680; Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 182 NE2d 147.

■ The decrease in value of the particular property under scrutiny is not of itself determinative. If, however, that decrease is substantial and the overall benefit to the community is slight, then the presumptive validity of the zoning ordinance is overcome. Westfield v. City of Chicago, 26 Ill2d 526, 187 NE2d

208; LaSalle National Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65.

In the instant case, the testimony of the witnesses, together with the maps and photographs introduced at the trial, reflect the business character of the immediate neighborhood. The area is dominated by the Shopping Center across Alpine Road despite the zoning demarcations laid out in the ordinance. To be sure, the use of streets as boundaries between different zoning classifications is valid and, often, logical. Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96. However, the use of such dividing lines must also be realistic, and realism compels us to conclude that the general character of this area is one of business.

That the plaintiffs suffer a substantial property loss under the old zoning is undisputed. All witnesses agreed that the highest and best use of the property would be business. The city argues that the re-zoning constitutes an encroachment of business into a residential district and that the preservation of the residential area is a benefit to the general community of greater importance than the financial loss to the individual owners. However, as we have seen, the classification of this as a residential area appears more arbitrary than realistic and the benefit to the community slight. The designation of an area as a buffer between business and residential uses which results in a two-block concentration of vacant lots is a misuse of the police-power.

The city also urges that the contemplated use of these lots as a service station and automobile agency would act as a hazard to the health and safety of the general public. Alpine Road is a main arterial highway with all the attendant dangers that a busy, heavily traveled road normally has. It is quite possible that the addition of a service station and automobile agency will create an additional hazard. However, the

330

danger inherent in any road over which 10,000 cars a day pass already exists and there is little reason to believe that the proposed use would substantially augment it. The effect of these uses will be minimal when compared to that of the Shopping Center, and the gain to the public by the present restrictions slight in comparison to the loss suffered by the owners, and in such cases, as we have seen, the courts are justified in declaring a restricting ordinance unreasonable and void. Myers v. City of Elmhurst, 12 Ill2d 537, 147 NE2d 300.

Presumably, the use of normal methods of traffic control could reduce the hazards and permit property owners the lawful use of their land.

For these reasons, we feel that the decision of the Circuit Court was correct and it will be affirmed.

Judgment affirmed.

MORAN and DAVIS, JJ., concur.