**Doris L. Gans, et al., Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 52,488.**

First District, Second Division.

November 26, 1968.

Raymond F. Simon, Corporation Counsel, of Chicago (Marvin E. Aspen and Henry N. Novoselsky, Assistant Corporation Counsel, of counsel), for appellant.

Victor J. Cacciatore and John J. Turner, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Plaintiffs instituted this action challenging the constitutionality of the Zoning Ordinance of the City of Chicago, as it applies to their subject property, and requesting the

trial court to enter a decree permitting them to construct a gasoline filling station on the premises. The trial court entered a decree granting the requested relief, in accordance with the recommendations of the Master to whom the cause had been referred for hearing. Defendant appeals.

The subject property, consisting of five unimproved lots, is located at the northeast corner of 95th Street and Michigan Avenue in Chicago. The property fronts 140 feet along 95th Street and extends 125 feet in depth along Michigan Avenue to an east-west alley next north of and running parallel to 95th Street. Ninety-fifth Street is a heavily traveled, 100-foot wide, U. S. arterial highway route, at this point consisting of four lanes of moving traffic and two parking lanes. Traffic at the 95th Street and Michigan Avenue intersection is controlled by a traffic light. The subject property lies within an area zoned B1–1 local retail which does not permit the use desired by plaintiff. The proposed use, a gasoline filling station, requires a B4–1 restricted service classification.

In October 1964 plaintiffs filed an application with the City Council of the City of Chicago seeking an amendment to the City's Zoning Ordinance. The application included not only the subject property, but the entire B1–1 district within which the subject property lies and which extends from Michigan Avenue on the west to Indiana Avenue on the east, and from 95th Street on the south to the alley next north of and running parallel to 95th Street on the north. The amendment was approved by the City Council but was vetoed by the Mayor in January 1965. Plaintiffs thereupon instituted the present action in the Circuit Court.

Defendant, City of Chicago, filed a motion to dismiss the action on the ground that plaintiffs, in seeking a ruling in the instant action with respect to the subject property alone, had failed to exhaust all available local

remedies, in that the City Council passed upon the application covering the entire B1–1 district wherein the subject property lies, but never was presented with the opportunity of acting upon an application covering the subject property alone.

Defendant's motion was denied and the trial court suggested that plaintiffs file with the City Council an application to amend the zoning ordinance by rezoning the subject property alone, in order to correct the situation. The subsequent application was denied in June 1966 and plaintiffs thereupon filed an amended complaint below setting up the said denial as proof of complete exhaustion of local remedies.

The subject property is located in a B1–1 local retail district which is bounded by Michigan Avenue on the west, Indiana Avenue on the east, 95th Street on the south, and the alley next north of and running parallel to 95th Street on the north. In addition to the five vacant lots comprising the subject property, this area consists of seven more lots, five of which are vacant and one of which is improved with a single-family residence; the seventh lot is improved with a three-story mercantile building housing a shoe repair shop and several apartments. The rest of the block, to the north of the alley north of this area, is zoned single-family residential and is improved with one, two and three-family dwellings, the single-family dwellings predominating.

Moving directly east from the subject property, the area from Indiana Avenue on the west to a point across Prairie Avenue approximately 110 feet west of Forest Avenue on the east, and from 95th Street on the south to the alley next north of and running parallel to 95th Street on the north, is zoned R3 general residential. This area is improved with eight single-family residences, a church, and a building housing a beauty shop in front and residence in the rear; there is also one vacant lot in this area. The rest of the block, to the north of the

alley, is zoned R2 and is developed with one and two-family residences.

The area from the point approximately 110 feet west of Forest Avenue on the west to Dr. Martin Luther King, Jr. Drive on the east, and from 95th Street on the south to the alley next north of and running parallel to 95th Street on the north, has a B2–1 restricted retail classification. This area is improved with four single-family residences and also contains several vacant lots. The area directly to the north of the alley is an R2 single-family residential district.

To the west of the subject property, from Michigan Avenue on the east to a point across Wabash Avenue approximately fifty feet east of State Street on the west, and from 95th Street on the south to the alley next north of and running parallel to 95th Street on the north, is an R3 general residential district. The north-west corner of 95th Street and Michigan Avenue, directly across the street from the subject property, is vacant. The balance of the area is improved with one, two and three-family dwellings, in addition to containing one vacant lot. The northeast corner of 95th and State Streets is zoned B4–1 restricted service and is improved with a gasoline filling station. The area north of the alley next north of and running parallel to 95th Street is zoned and improved single-family residential. Running in a north-south direction, immediately west of State Street, is the Dan Ryan Expressway. Access to and from the Expressway and 95th Street is provided along State Street.

The south side of 95th Street, from State Street on the west to Michigan Avenue on the east, and from 95th Street on the north to the alley next north of and running parallel to 103rd Street on the south, is zoned R3 general residential. A public park fronts along 95th Street, from State Street to Michigan Avenue, and extends southward approximately three blocks. The park is diagonally across from the subject property.

From Michigan Avenue on the west to Indiana Avenue on the east, and from 95th Street on the north to the alley next south of and running parallel to 95th Street on the south, the area is zoned B4–1 restricted service. The southeast corner of 95th Street and Michigan Avenue, directly across 95th Street from the subject property, is developed with a gasoline filling station. Proceeding easterly along the south side of 95th Street from the filling station, the lots are improved with a construction office with residence above, a real estate office with residence above, a beauty shop, a restaurant, and a gasoline filling station on the southwest corner of 95th Street and Indiana Avenue.

To the south and southeast of the above described B4–1 district are areas zoned R2 and R3, having as their northern boundary lines the alley next south of and running parallel to 95th Street. Their east and west boundary lines are, respectively, Dr. Martin Luther King, Jr. Drive and the aforementioned public park.

Directly to the east of the above described B4–1 district, from Indiana Avenue on the west to Forest Avenue on the east, and from 95th Street on the north to the alley next south of and running parallel to 95th Street on the south, the district is zoned C1–1 restricted commercial. The area between Indiana Avenue on the west and Prairie Avenue on the east within this district is vacant. The area from Prairie Avenue on the west to the southwest corner of 95th Street and Forest Avenue on the east is developed with several factory and office buildings and a church.

After taking extensive evidence, the Master found, inter alia, that the proposed use would be compatible with the businesses developed in the general area along 95th Street; that the proposed use would have no appreciable effect upon the values of the surrounding properties; and that the presence of the filling stations across the street from and a block to the east of the subject

461

property, the proximity of the subject property to the Dan Ryan Expressway, the existence of traffic lights at the 95th Street and Michigan Avenue intersection, and the fact that 95th Street is a heavily traveled arterial highway, constituted "weighty evidence" in determining that the proposed use was desirable. The Master further found that the presence of the two existing filling stations within a block of the subject property did not substantially hinder the development of the area south of 95th Street, and that traffic generated by the development of the proposed use would not create any greater hazard to children in light of the present traffic situation along the heavily traveled 95th Street. The Master finally found that plaintiffs fully exhausted their local remedies with respect to application for an amendment to the zoning ordinance.

Two expert witnesses testified on behalf of the plaintiffs. William Lawrence, a city planning and zoning consultant, testified that the highest and best use of the subject property would be under such use as is permitted by a B4–1 zoning classification. His opinion was based primarily on the existence of the two gasoline filling stations across from the subject property and the general "business development" on the south side of 95th Street. The witness felt that since the existing filling stations have been developed, it would be proper for another filling station to exist on the north side of 95th Street, facing the developed stations. He further testified that since the 95th Street area is generally zoned for business uses, allowing the proposed change would have no adverse effect upon the surrounding and nearby properties. Mr. Lawrence stated that there is a traffic signal at the 95th Street and Michigan Avenue intersection and that additional pedestrian and vehicular traffic would be generated no matter what type of business use is developed upon the subject property. The witness testified that, upon his visit to the subject property, he observed "no great deal of pedestrian traffic other than, basically,

the children." He admitted on cross-examination that 95th Street, "in certain instances," could constitute a proper zoning boundary line and that in "certain instances it would be reasonable if the city fathers allowed [gasoline filling] stations on one side and did not allow stations on the other side of the street, as they often do."

John McNamara, a real estate appraiser, testified on behalf of plaintiffs and stated that, under its present zoning classification, the value of the subject property is $25,000, whereas it would be $70,000 under the proposed B4–1 classification. He further testified that development of the property as a filling station would "help the surrounding area instead of hurting it." On cross-examination the witness testified that children use the city park across the street from the subject property, that the development of a gasoline filling station would generate a certain amount of additional vehicular traffic, and that it is important to protect the safety of children in situations of heavy traffic.

Richard McKennon, a city planner, testified on behalf of the defendant and stated that the subject property, from a zoning standpoint, should retain its present B1–1 classification. His opinion was based upon the detailed zoning and development of the areas surrounding the subject property, including the development and zoning along both sides of 95th Street and the development and zoning in the neighborhood areas to the north and south of 95th Street. He stated that 95th Street is a logical zoning boundary and that it would not be proper, from a zoning standpoint, to employ an alley, such as exists to the north or to the south of 95th Street, as the zoning boundary between districts when a "natural boundary" like 95th Street is available.

Raymond Hayes, a real estate appraiser, testified on behalf of the defendant and stated that the value of the subject property, as presently zoned, is $35,000, and if zoned B4–1, would be valued at $52,500. He testified

that the highest and best use of the subject property, based upon the community's general health, welfare and morals, is as presently zoned. His reasoning was based upon the relatively high values of the buildings in the surrounding residential area, and the further fact that filling stations normally generate noxious odors, noise, debris, and the like. He also stated that he conducted a study of filling stations in the Chicago area and found that many of them failed financially within a short time of the inception of operations; the normal result of these failures was the removal of the gasoline pumps and the boarding up of the station building, giving the area a distasteful appearance. Mr. Hayes stated that the area in question was already adequately serviced by gasoline filling stations, and that the chances were "good" that a station developed on the subject property would fail financially.

Mr. Hayes further testified that, in addition to the noise, odors, debris, etc., generated by a filling station developed on the subject property, the value of nearby properties would decrease from 10 to 25 percent, depending on the proximity of the property to the filling station, and that a great deal of "sales resistance" is met with when such nearby properties are placed for sale. The witness stated that a filling station would generate more vehicular traffic which would be undesirable in view of the public park across the street and the children moving about in the area.

Mr. Fred Hoard, a local resident, testified that the local community association opposed the proposed change in zoning and that from three to five hundred residents in the area signed a letter to the Mayor requesting that the use be denied.

The first question raised by defendant is that plaintiffs failed to exhaust all available local remedies before instituting the instant action and consequently had no standing in the trial court. However, it is not necessary

464

to resolve this matter since, assuming without deciding that plaintiffs did exhaust all available local remedies and that they did have standing before the court, we are of the opinion that the evidence fails to show that the City of Chicago Zoning Ordinance is arbitrary and unreasonable as applied to the subject property. Plaintiffs' evidence proves no more than it would be "more advantageous" or "more desirable" for the subject property to be zoned B4–1 than as presently zoned.

■■ A presumption of validity attends a zoning ordinance adopted pursuant to legislative intent; a party attacking such ordinance has the burden of proving, by clear and convincing evidence, that the ordinance is arbitrary and unreasonable, and that it is without substantial relation to the public health, morals, safety and welfare. Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643.

The evidence reveals that, apart from the B4–1 use adjacent to the Dan Ryan Expressway at the northeast corner of 95th and State Streets, the entire area fronting on the north side of 95th Street, from State Street on the west to Dr. Martin Luther King, Jr. Drive on the east, is zoned either R3 general residential, or B1–1 local or B2–1 restricted retail. The area fronting on the south side of 95th Street, within the above east-west boundaries, except for the public park area to the west which is zoned general residential, is classified either B4–1 restricted service or C1–1 restricted commercial. The logical conclusion is that the legislative intent was to employ 95th Street as the zoning district line between areas involving the development of differing intensity uses.

Plaintiffs' evidence fails to prove that the 95th Street line of demarcation is unreasonably or arbitrarily drawn. Plaintiffs' witness McNamara expressed no opinion as to whether 95th Street constituted a proper zoning boundary. Plaintiffs' witness Lawrence, on the other hand, stated on cross-examination that "it could be possible

. . . in certain instances" that a highway such as 95th Street would constitute a proper zoning district boundary. It appears that the main thrust of plaintiffs' case goes to showing that the development of the subject property as a gasoline filling station would be "more advantageous" or "more desirable" than its development as a use under the present zoning, rather than to showing that the line of demarcation is arbitrary or unreasonable as applied to the subject property. Heavily relied upon were the two filling stations across from the subject property in the B4–1 district on the south side of 95th Street. Yet, on cross-examination, plaintiffs' witness Lawrence testified that "in certain instances it would be reasonable if the city fathers allowed stations on one side and did not allow stations on the other side of the street, as they often do."

The fact that there would be an enhancement of the value of the subject property under a B4–1 classification, while a factor to be considered, is not decisive in determining the reasonableness of the existing classification. Jacobson v. City of Evanston, 10 Ill2d 61, 139 NE2d 205. Likewise, the fact that 95th Street is a heavily traveled highway is not, of itself, decisive. Kellett v. County of DuPage, 89 Ill App2d 437, 231 NE2d 706. Although it shows that the corner occupied by the subject property would be "ideal" for development as a gasoline filling station, plaintiffs' evidence falls short of constituting the clear and convincing evidence necessary to rebut the presumption of validity attaching to the zoning ordinance or of proving that the ordinance is arbitrary and unreasonable as applied to the subject property.

In the case of LaSalle Nat. Bank v. City of Chicago, 6 Ill2d 22, 126 NE2d 643, plaintiff wished to erect a gasoline filling station on the east side of Sheridan Road in Chicago, within an area zoned for and developed with apartment uses. The west side of Sheridan Road was

zoned for commercial uses and was developed with two gasoline filling stations. In reversing a lower court decree entered in favor of plaintiff allowing the desired use, the Supreme Court stated, at pages 28 to 31:

> "To establish its contention that the zoning classification of the . . . ordinance as applied to the subject property is arbitrary and unreasonable, appellee has been content to introduce proof of the nature of the uses of the surrounding property, particularly the commercial and business uses existing across the street on the west side of Sheridan Road in the block in which the subject property is located. . . . In sustaining appellee's position the trial court found that the subject property is not characterized by the residential area to the east but rather by the business uses on the opposite side of Sheridan Road. The evidence does not sustain and we cannot agree with this conclusion.
>
> . . . . . .
>
> ". . . It cannot be said that the fixing of zoning lines with a different classification on either side of such boundary renders limitation on use of the property near the boundary line in a more restricted district unreasonable and void (citation omitted). Considering the width and character of Sheridan Road and the traffic it carries, we are not prepared to say that it was arbitrary and unreasonable to provide different zoning classifications for opposite sides of the street, especially in view of the use developments heretofore related which show that the properties to the north, south and east of the subject premises are devoted almost entirely to residential uses."

See also LaSalle Nat. Bank v. City of Chicago, 68 Ill App2d 412, 216 NE2d 224; Reese v. Village of Mount Prospect, 72 Ill App2d 418, 219 NE2d 682.

■ Considering the effect a gasoline filling station would have on the value of surrounding properties and the health and safety of local residents, with its attendant noise, noxious odors, debris, ever present danger of fire or explosion, and the like; the probability of financial failure of a filling station at the site inasmuch as the area is already serviced by several stations; the presence of children in the area due to the public park across the street from the subject property; the uniform development of uses on the north and on the south sides of 95th Street consistent with the zoning classifications in the respective areas, it cannot be said that the ordinance does not bear a relationship to the public health, safety, welfare and morals. See Miller Bros. Lumber Co. v. City of Chicago, 414 Ill 162, 111 NE2d 149; Bulk Petroleum Corp. v. City of Chicago, 18 Ill2d 383, 164 NE2d 42; Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643.

For these reasons the decree is reversed.

Decree reversed.

McNAMARA and LYONS, JJ., concur.