Warren E. Rebman, Gloria M. Rebman and Lydia L. Page, Plaintiffs-Appellees, v. The City of Springfield, the City Council of the City of Springfield, the City Plan Commission of the City of Springfield, and the State of Illinois, Defendants-Appellants, Illinois State Historical Society and the Abraham Lincoln Association, Amicus Curiae.

Gen. No. 11,133.

Fourth District.

August 12, 1969.

Rehearing denied September 12, 1969.

Robert C. Walbaum and Ines C. Hoffmann, of Springfield, for appellants.

R. G. Heckenkamp, of Springfield, for appellees.

Sorling, Catron and Hardin, of Springfield (Charles H. Northrup and Richard E. Hart, of counsel), for amicus curiae.

CRAVEN, J., delivered the opinion of the court.

The plaintiffs were successful in the Circuit Court of Sangamon County in their attack upon the validity of that part of the zoning ordinance of the City of Springfield which placed their property in "H–1" Historical Zone. This zone, under the Springfield zoning ordinance, relates to a four-block Historical District extending from Seventh to Ninth Streets and from Edwards to Capitol Avenue. The home formerly owned and occupied by Abraham Lincoln is at the northeast corner of Eighth and Jackson Streets, the central intersection of the area. The Lincoln Home faces on Eighth Street (now closed to vehicular traffic in the Historical District) and the lot extends east to a north-south alley between Eighth and Ninth. The Historical Zone or District permits the property located therein to be used for residences, churches, publicly owned centers, auditoriums, historical museums and professional, governmental or business offices not used for retail sales. The zone classification is subject to a height restriction of 35 feet, the same as that fixed for residential districts designated "R–1" through "R–4" of the city zoning ordinance, and the yard and lot requirements are the same as those for "R–4" General Residence Districts. Certain

432

architectural controls are applicable to the district, those being a continuation of controls imposed under a 1961 ordinance. (Those controls, as we see it, are not in issue here.) At the time the plaintiffs acquired the property in question it was zoned under a 1924 zoning ordinance of the City as "B" Residential, "B" Area, with a 45-ft. height limitation.

In 1966, the City of Springfield adopted a comprehensive zoning ordinance and the plaintiffs' property was placed in the Historical Sites Area. Prior to the adoption of the 1966 zoning ordinance plaintiffs filed a petition to reclassify their property from "B" Residential to "C-2" Commercial and from "B" Area to "D" Area. Before a hearing was held on the petition the new ordinance was adopted and the plaintiffs filed an amended petition to reclassify their property from Historical Sites District to a classification in the new ordinance designated as "B-2" General Business Service District. A hearing was held on the amended petition by the Springfield Plan Commission. That Commission recommended its rejection and the City Council did reject the petition in August of 1966. Thereafter, in July of 1967, the plaintiffs made application for a building permit to construct a masonry and frame commercial building, proposed to be used as a restaurant, on the property. This application was referred to the Historical Sites Commission which conducted a hearing and recommended to the Council that the application be denied. The Council adopted this recommendation and the application was denied.

This action was originally instituted in October of 1966, challenging the right of the City to retain the "H-1" classification for the plaintiffs' property. After the denial of the building permit for construction of the restaurant, known as a "Top Boy" drive-in restaurant, plaintiffs amended their original complaint adding counts challenging the denial of the building permit.

433

The pleadings as thus ultimately established consisted of six counts. Count I sought administrative review of the City Plan Commission recommendation and the City Council action in denying the petition for reclassification of the property of plaintiffs; Count II sought a declaratory judgment declaring the existing zoning of the plaintiffs' property to be invalid; Count III attacked the validity of the statute authorizing cities to establish historical sites or areas and the action of the City Council pursuant to that statute; Count IV sought injunctive relief against the enforcement of the zoning classification; Count V sought to review the action of the Historical Sites Commission and the City Council denying the building permit; and Count VI was a count for damages asserting that the zoning classification amounted to a taking of plaintiffs' property for public use for which they were not compensated. Motions by the defendants to dismiss these various counts were denied, although ultimately the trial court did dismiss Count VI and no cross-appeal has been perfected as to that action.

Extensive hearings were held and ultimately the circuit court, by its decree, determined the zoning ordinance of the City of Springfield to be invalid as applied to plaintiffs' property and enjoined the City from enforcing the provisions of the ordinance as to the property. The decree further determined and ordered:

"3. That the fair, reasonable and proper classification of Plaintiffs' property is hereby declared to be B–2 Business District, and Plaintiffs are entitled to devote their property to such uses as are permitted under such B–2 Business District classification of the Zoning Ordinance of the City of Springfield adopted June 28, 1966."

A memorandum opinion of the trial court expressed a like conclusion.

434

At the time of the adoption of the 1966 zoning ordinance by the City, the City was authorized by the provisions of section 11–13–1 of the Municipal Code (Ill Rev Stats 1965, c 24, § 11–13–1) to enact zoning ordinances. In addition, section 11–48.2–2 was added to the Illinois Municipal Code (Ill Rev Stats 1967, c 24, § 11–48.2–2) by the Legislature in 1963, as amended in 1965. The substance of this legislation was to authorize municipalities to enact regulations protecting historical areas. We will discuss this statutory authorization in detail in the course of this opinion.

The defendants originally appealed to the Illinois Supreme Court and a portion of their brief is devoted to the proposition that the Supreme Court did have jurisdiction of this case which, while a zoning case, has some unique aspects by reason of the statutory authorization to protect historical areas. The Supreme Court declined a direct appeal and transferred the case to this court on its own motion. Its order of transfer reads:

"This is an appeal from a judgment holding that the provisions of the City's Zoning Code including plaintiffs' property in an Historical District were invalid as applied to plaintiffs' property. While the zoning classification is unique, the issue decided by the trial court and the issue before a reviewing court is *no different than that in the typical zoning dispute* and no substantial constitutional question is presented. (First National Bank v. Evanston, 30 Ill2d 479.) On the Court's own motion the cause is transferred to the Appellate Court for the Fourth District." (Emphasis added.)

We thus turn to a review of this record under that order of transfer.

The plaintiffs, Warren and Gloria Rebman, own two of the lots involved. The corner lot (the northwest corner

435

of Ninth and Edwards Streets) has two duplexes facing Edwards Street and also a small boiler building which serves all of the Rebman property. On the next lot there are two small single-family dwellings, one facing Ninth Street and the other located on the rear of the lot just east of the alley between Eighth and Ninth Streets. Each lot has a 40-ft. frontage on Ninth Street. The Rebmans purchased the property in 1960 for $33,000 knowing that it was then zoned "B" Residential. An accounting of their income and expense as to the property is in evidence.

The third lot, next to and north of the Rebman lots, is owned by the plaintiff Lydia L. Page. It was purchased some thirty-three to thirty-five years ago. The record does not establish what the purchase price was but it does establish that this lot and the single-family residence located thereon has been and is now being used as a residence. Mrs. Page, by her testimony, clearly indicated her willingness to make any future use of the property agreeable to and in conjunction with the use of the Rebman property.

The property of the plaintiffs is on the southeastern edge of the established four-block Historical Area. On Ninth Street, north from Edwards (north of the Plaintiffs' property), there is a long single-story building used as a car wash and immediately north thereof a paved area and an auto seat cover business that occupy the next three lots. Then there is a multifamily residence and on the next lot (a corner lot), at Jackson Street, there is a multifamily residence. In the area north of Jackson Street there is a parking area owned by the City of Springfield that is metered and provides parking for Lincoln Home visitors. North of it is a gas station and a private parking lot adjacent to it.

Ninth Street is a major traffic-bearing street in the city of Springfield. It is City Route 66. In the area of Ninth Street immediately across from the two-block

436

Lincoln Home area, there are many commercial uses and there are commercial uses on Ninth Street more heavily on the east side but also partly on the west side both to the north and to the south of the Lincoln Home Area. The "H–1" Historical District, under the 1966 zoning map, has a zoned area around it of a central shopping district. The area to the south, for a distance of some eight blocks, is zoned "R–5," which is a general residence and office district, except that on the half-block west of Ninth Street there is a highway business service district and across Ninth Street from the plaintiffs' property there is a light industrial district.

■ The record establishes further, however, that the four-block "H–1" District is primarily now a district residential in character, although there are uses that do not conform to the "H–1" classification. By and large, Edwards Street, Seventh, Jackson, Eighth and parts of Capitol Avenue contain properties the usage of which would be and is permitted under the "H–1" Historical District zone. Although there are nonconforming uses, upwards of eighty per cent of the property in the district is being used in conformity with the zoning ordinance. The existence of nonconforming uses does not per se invalidate a zoning regulation or ipso facto justify further development contrary to the prevailing character of an area. Trendel v. County of Cook, 27 Ill2d 155, 188 NE2d 668 (1963). Aerial photographs of the Lincoln Home District—the "H–1" District under the Springfield ordinance—rather clearly demonstrate the residential character of the area.

■ ■ Ninth Street, particularly its east side, cannot be so characterized. It is primarily "commercial." Such is not true of the west side of Ninth Street where plaintiffs' property is located. It is urged that the use of Ninth Street as a dividing line is unrealistic and that, more appropriately, the dividing line between the Historical District and commercial uses should have been

437

the alley between Eighth and Ninth Streets—the alley that constitutes the east boundary of the lot on which the Lincoln Home is located. Obviously, in establishing zoning areas and the limitations on land use, lines of demarcation between permitted uses have to be drawn someplace—whether a street or an alley or along natural barriers such as lakes or rivers. We know of no judicially imposed requirement that such lines of demarcation be alleys as distinguished from streets, or vice versa. The Supreme Court has recognized that a street may be a proper line between zoning districts, especially where the street is wide and heavily traveled. La Salle Nat. Bank v. City of Chicago, 6 Ill2d 22, 126 NE2d 643 (1955) ; Mundelein Estates, Inc. v. Village of Mundelein, 409 Ill 291, 99 NE2d 144 (1951) ; see also: Northern Trust Co. v. City of Chicago, 4 Ill2d 432, 123 NE2d 331 (1955) ; Davis v. City of Rockford, 60 Ill App2d 325, 208 NE2d 110 (2nd Dist 1965) ; Reese v. Village of Mount Prospect, 72 Ill App2d 418, 219 NE2d 682 (1st Dist 1966) ; Gans v. City of Chicago, 102 Ill App2d 456, 243 NE2d 400 (1st Dist 1968).

It is urged here and the record establishes that the plaintiffs' property would be more valuable to them if they could use it for purposes not permitted by the existing zoning. That is generally true in zoning cases. Uses that are permitted under the Historical zoning are uses that the plaintiffs' witnesses described as desirable uses of the area. In this connection we note the lack of specificity with which the term "commercial purposes" was used throughout this proceeding. In Liberty Nat. Bank of Chicago v. City of Chicago, 10 Ill2d 137, 144, 139 NE 2d 235, 240 (1957), the court observed:

"The undisputed testimony is that plaintiffs knew the property was zoned for residence purposes when they bought it and that they paid a price consistent with its use for that purpose. The fact that its value will now be enhanced if a business use is

438

permitted does not justify a conclusion that the ordinance is confiscatory. (First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 227 [130 NE 2d 267 (1955)].) As in the case last cited, there is no proof in the record that the property is totally unsuited for the purpose for which it is zoned or that it is now worth any less for residence purposes than it was at the time it was bought. It cannot be said that the ordinance operates to substantially diminish the value of plaintiffs' property."

That which the court there observed is very applicable here and fits hand-in-glove the evidentiary situation we find in this record.

The Historical District was established because of the Lincoln Home. This home, purchased by Lincoln in 1844, enlarged in 1856, was the only home ever owned by the Sixteenth President. Its historical significance is well-documented by this record. It is clear that there is community, state and national interest in preserving the Home and the area around it as a memorial to Lincoln and as an inspiration to the multitude of visitors who come to Springfield to visit the Home, the Tomb, New Salem State Park and the new restored Old State Capitol Building. The plaintiffs do not object to this purpose but rather applaud it. It is their position, however, that this method of preservation of the Historical Area for public use amounts to a confiscation of their property for public use without just compensation. That, they say, is the effect of the Historical District use limitation on their property.

Paragraph 11–48.2–1 of chapter 24, Ill Rev Stats 1967, contains a declaration of policy by the Legislature as a preamble to the act relating to the preservation of historical and other special areas. From the language there found it is clear that the subsequent grant of authority to municipalities to preserve areas, places, buildings, structures, works of art and other objects having special his-

439

torical community or aesthetic interest was based upon a legislative determination—first, of desirability; second, of public welfare; and third, a total delegation of authority to do that which the state itself could do. Section 11–48.2–5 of that act (Ill Rev Stats 1967, c 24, § 11–48.2–5) defines that which constitutes a taking or damage for public use requiring compensation. Section 11–48.2–2 permits of designation by ordinance of areas or buildings and to provide special conditions and to impose regulations governing alteration, demolition and use.

We consider this grant of authority as auxiliary to the general zoning power granted to the city in the Municipal Code previously alluded to. It is uncontroverted that the Lincoln Home would be well within the purview and purport of this legislation. Springfield, by this ordinance and under the zoning legislation and legislation for the preservation of historical and other special areas, has done that which has been done in some fifty-six other communities in America located in nineteen different states, and it is not unlike that which has been done on the federal level in connection with the preservation of the Georgetown Area in the United States Capitol, Washington, D. C. See Montague, New Means for Historic Preservation, 55 ABAJ (March 1969), p 257, and cases there cited.

Cases cited to us which have considered this issue are persuasive, though admittedly not here determinative. See: Town of Deering ex rel. Bittenbender v. Tibbetts, 105 NH 481, 202 A2d 232 (1964); City of Santa Fe v. Gamble Skogmo, Inc., 73 NM 410, 389 P2d 13 (1964); In re Opinion of the Justices, 333 Mass 773, 128 NE2d 557 (1955); City of New Orleans v. Pergament, 198 La 852, 5 So2d 129 (1941); Vieux Carre Property Owners & Associates, Inc. v. City of New Orleans, 246 La 788, 167 So2d 367 (1964); Trustees of Sailors' Snug Harbor v. Platt, 288 NYS2d 314, 29 App Div 2d 376 (1968).

■ We see no useful purpose in discussing the details of these cases or distinguishing one from the other because of a municipal ordinance under a constitutional provision authorizing city preservation of historical areas, or state statutes contemplating the same result. The common denominator to all of those cases and to this case, it seems to us, is the fact that preservation of historical areas under reasonable limitations as to use is within the concept of public welfare and may be effected by the exercise of the usual police power attendant upon zoning.

■ The ordinance here under attack—as is the case of all zoning ordinances—is presumed valid and the burden is upon the plaintiffs to establish its invalidity by clear and convincing evidence. Where there is room for a fair difference of opinion concerning the reasonableness of a particular zoning classification, the legislative judgment will be respected and sustained. See Fox v. City of Springfield, 10 Ill2d 198, 139 NE2d 732 (1957), and cases there cited. We do not find in this record that which is sufficient to overcome this presumption of validity, nor do we find in this record any evidentiary basis for the conclusion that the legislative judgment was unreasonable, arbitrary or capricious. The record does not establish that the Historical District zoning as to plaintiffs' property is confiscatory.

The action of the Legislature in the passage of the historical sites legislation essentially created a new concept of public welfare and, as we have noted, permits of the exercise of the police powers of the municipality for purposes of preservation and enhancement of historical areas. The creation of the four-block area around the Lincoln Home, obviously, is aimed at fulfillment by the municipality of the concept authorized by the Legislature. The property of the plaintiffs here, it must be said, has an enhanced value due in large part to this action of the municipality. The proximity of the property

441

to the Lincoln Home increases its value, and yet it is clear that use of the property not in conformity with the existing zoning would be detrimental to the Lincoln Home Area and the planning concept of the municipality.

██ ██ We necessarily note some procedural infirmities that must be discussed although not determinative of any issue. Count I sought administrative review of actions of the Plan Commission as well as an ultimate administrative decision of the City Council. The action of the City Plan Commission or the Historical Sites Commission, insofar as relevant to this case, was clearly advisory only. We know of no authority that makes an advisory recommendation to the ultimate decision-making body a matter subject to administrative review. This point fades into insignificance, however, in view of the fact that there are good counts to the complaint upon which to proceed.

██ The decree here not only declared the zoning invalid but, as we have noted, proceeded to declare that the plaintiffs were entitled to use their property for any use as is permitted under "B–2" Business District classification of the 1966 Springfield Zoning Ordinance. In our view, this provision of the decree exceeds the proof in the record and the specific use proposed by the plaintiffs. The record is devoid of any showing of any other contemplated use. The issue as to the use of the property for the drive-in restaurant becomes clouded in view of a supplementary affidavit received after all the evidence was in which purported to show that the particular restaurant chain was no longer interested in leasing the plaintiffs' property. The decree cannot be said to have been framed with reference to the record below within the admonitions of the Supreme Court in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill 2d 370, 167 NE2d 406 (1960). In Treadway v. City

of Rockford, 24 Ill2d 488, 493–494, 182 NE2d 219, 222–223 (1962), the Supreme Court stated:

"Zoning lies primarily within the province of the municipality, and it is neither the province nor the duty of courts to interfere with the discretion with which the municipal authorities are vested unless the action of the municipal authorities is shown to be unrelated to the public health, safety, and morals. (Citing case.) Nothing in our decision in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370 [167 NE2d 406 (1960)], nor in any of the similar cases, detracts from this fundamental principle."

Thus, on this record, within the purview of the cited authorities, the decree, in purporting to rezone the property, exceeded the authority of the court. This, like the procedural issue, however, is not a determinative factor here in view of our determination that the ordinance of the City of Springfield is valid.

The decree of the Circuit Court of Sangamon County is reversed and this cause is remanded to that court to enter judgment for the defendants-appellants on Counts I through V of the amended complaint.

Reversed and remanded with directions.

TRAPP, P. J. and SMITH, J., concur.