CITIZENS BANK & TRUST CO. OF PARK RIDGE, AS TRUSTEE UNDER TRUST No. 895, Plaintiff-Appellee, v. THE VILLAGE OF MOUNT PROSPECT, Defendant-Appellant.

(No. 53914;

First District—December 30, 1970.

CRAVEN, P. J., dissenting.

Robert F. Moore and John J. Zimmerman, both of Mount Prospect, for appellant.

Di Leonardi, Hofert and Samelson, of Des Plaines, (Robert J. Di Leonardi, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

In a declaratory judgment action, the circuit court declared a zoning ordinance of the defendant municipal corporation to be invalid insofar as it related to property of the plaintiff-trustee of a land trust with one Blair as beneficial owner—and by its final judgment order declared that the property could be used as an off-street parking facility for motor vehicles on a nonfee basis and enjoined the Village from interfering with the construction of such a parking facility. The defendant appeals. The plaintiff sought unsuccessfully before the Zoning Board of Appeals and the Village Board to reclassify the property from R-1, a single-family residential zone, to a zoning classification which would permit paved off-street not-for-fee parking.

The subject property is located on the northeast corner of I-Oka Avenue and Golf Road in the Village of Mount Prospect and is located in a subdivision known as Lonnquist Gardens and is described as Lot 12 in Block 4 of that subdivision. The property has a 100-foot frontage on Golf Road and a 138.89-foot frontage on I-Oka. Lot 11, the property

immediately to its east, has a 190-foot frontage on Golf Road and a 138.89-foot frontage on Elmhurst Road. Plaintiff's property is occupied by Blair as a single-family dwelling. The lot to the east is improved with a two-story modern brick office building and is currently occupied by the Robert Nelson Realtors, Inc., and other businesses. The Nelson property has some off-street parking to its south and in 1962 was zoned B-2 as a business-office district. Thus the plaintiff's property and the Nelson property in conjunction front a total of 290 feet on Golf Road between I-Oka Avenue and Elmhurst Avenue. The Nelson property is the only property in this block which is not a single-family dwelling and is not subject to a restrictive covenant restricting lots in this subdivision to one single-family dwelling on each lot.

Blair purchased his property in 1960. At that time the property south of Golf Road was a cornfield and the property immediately east (the Nelson property) was vacant. At the time of his purchase, his own home and all of the homes to the north and west were developed. When the Nelson property was rezoned by the Village, Blair opposed the rezoning. Golf Road runs east and west and the property within the Village of Mount Prospect lying on the south side of Golf Road is zoned and used for commercial purposes. There is a Sinclair gas station on the southwest corner of Elmhurst and Golf Road and then south of there is a commercial area with a drug and food store. On the south side of Golf Road, east of Elmhurst, there is a shopping center, but this particular area is in the Village of Des Plaines, Elmhurst Road being the dividing line at that point. The land south of Golf Road had originally been zoned by the county as residential, but on annexation by the Village of Mount Prospect was zoned commercial in some of the more obnoxious forms of such use. Golf and Elmhurst Roads have been improved and widened since Blair acquired his property.

In 1968, the State reconstructed Golf Road and converted it to a four-lane highway consisting of two lanes in each direction with a 16-foot wide median extending from the intersection of Elmhurst Road to some 100 feet west of I-Oka. The median contains a barrier precluding crossover of traffic. Elmhurst Road is State Route 83 and is likewise a four-lane highway. Both are now heavily traveled streets. Indeed it appears from the record that traffic on these roads has increased more than tenfold according to actual traffic count. Thus when we take a bird's-eye view of this area in 1960 when Blair bought the property and the present time when he proposes to sell it to Nelson for the specific use of an addition to or an extension of the existing off-street parking of the Nelson property, we find a massive change in the area. A part of this change necessarily came about by the very natural growth of the area and its

needs. One cannot but help notice however that the change from single-family zoning in the general area was brought about not through the action of this plaintiff, but through the action of the Village itself. (*Western Terrace Building Corporation v. Village of Palatine*, 102 Ill.App.2d 116, 243 N.E.2d 566.) In 1962 it permitted the intrusion by Nelson into this solid block of single residence subdivision. It annexed the property across the road from the Blair property and promptly changed the classification into commercial. Its strong reliance on the presumption of the validity of the zoning classification is somewhat undermined by the observation that the Village itself has permitted or instituted the erosion of its own original ordinance. It approved the change of classification for the Nelson property. It permitted the creation of a parking lot on the west portion of the Nelson property to serve the property. It changed the classification from residential to commercial across Golf Road to the south. In *Colvin v. Village of Skokie*, 54 Ill.App.2d 22, 26, 203 N.E.2d 457, 459, the court stated:

"By reclassifying the property next to the plaintiffs', the village indulged in a bit of spot zoning and by doing so voluntarily destroyed uniformity with surrounding, existing uses. The spot zoning not only authorized a commercial use in a residential district, but permanently exposed the home owners on Fitch Avenue to the same effects against which the village now protests."

To a like effect is the *La Salle National Bank of Chicago v. Village of Skokie*, 62 Ill.App.2d 82, 210 N.E.2d 578, where the court observed that it was not a case in which the court was asked to invade a residential area with nonresidential use. The municipality had already invaded the area by changing the residential zoning to a B-2 commercial district as here. Blair here protested but his protest fell upon deaf ears. Now when he seeks to obtain an extension of the uses which the Village had specifically permitted next door he is thwarted by its refusal to do so. Not alone is Blair thwarted in the sale of his property, but the passage of an off-street parking ordinance by the Village will preclude Nelson from the full occupancy of his building unless he can obtain off-street parking somewhere. This is what he sought to do by the purchase of the Blair property. He sought only to increase a user that had already previously been authorized by the Village. If the use now proposed has any relationship to the health, safety, public welfare or morals of the Village of Mount Prospect, it is not now apparent and just why it has such a relationship today when it had no such relationship in 1962 is somewhat difficult to envision. Cases cited by the Village urging the presumption of the validity of its action and cases cited suggesting that streets may be proper lines of demarcation are not persuasive that we ought to hold

that they *must* be lines of demarcation. The argument of the Village that Golf Road was a natural dividing line may have had some merit in 1962. It has a hollow sound today. When the Village permitted the intrusion it pretty well nullified both the presumption and the argument that Golf Road is the proper barrier. Both are long since gone through its own voluntary action.

Presently to the west of the Nelson property is a parking lot for the use of its building with provision for fifty cars. The addition of the Blair property to this parking lot will provide forty additional spaces and will apparently be adequate for the full user of the Nelson building. A six-foot brick wall architecturally in harmony with the Nelson building will run along the north side of the new parking lot and then as it moves along the west side will be diminished in height. There will be no exit from the lot to I-Oka Avenue. Apparently at present the outlet is on to Golf Road. The decree of the circuit was framed to conform the proposed user into a required use and to permit the user in accordance with the plans and specifications submitted. Accordingly, the decree is not an attempt of the court to rezone the property and invade the legislative function by a general rezoning but rather to permit a truly limited use in conformity with the testimony. The complaint that the decree is too broad is without merit. *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill.2d 370, 167 N.E.2d 406; *Treadway v. City of Rockford*, 24 Ill.2d 488, 182 N.E.2d 219.

The Nelson building is an early American colonial building of red brick, white gable ends, white colonial columns, wooden columns on the face of the building and shuttered windows. The fence which is proposed around the parking area on the Blair side would be similar in design to the Nelson building so that at its conclusion the two properties would take on the appearance of "oneness" as though they were one parcel of property. Thus the entire south end of the block would now be a composite unit and all that lies north would be compact residential area. The line of demarcation would be the west line of what is now the Nelson and Blair property. The entire block fronting on Golf Road would have a similar symmetrical and sensible user whose offense to the public welfare, safety, health or morals is either non-existent or minuscule when compared to the enforcement of the residential restriction as it affects the Blair-Nelson properties. Under such circumstances, the restriction fails. *Tillitson v. City of Urbana*, 29 Ill.2d 22, 193 N.E.2d 1.

It has been said that one picture is worth a thousand words. The pictures offered in evidence here caused the trial court to say: "One persuasive fact I thought was the first exhibit in the form of the pictures, of what the owner of this property sees when he looks out of his window.

It certainly is not residential by any stretch of the imagination. But this is the nature of development. And this is the change that has taken place * * *." These pictures, as well as the testimony of Blair, show clearly what has taken place in this area. None of this existed when he purchased his property in 1960. The evidence now discloses that he can sell his property to Nelson for $45,000.00 and that its value for single-family purposes is somewhere around $30,000.00 or more. This alone is not a controlling factor, but one of the elements to be considered. As was aptly stated in *Tillitson v. City of Urbana*, 29 Ill.2d 22, 193 N.E.2d 1, "The record here shows neither uniformity, nor a long established adherence to the residential classification. Rather, it shows that the immediate area is interspersed with commercial uses, the majority of which have been rezoned for such purposes and, most significantly, that the land at the northwest corner of the intersection, immediately across Lincoln Avenue from the subject property, was rezoned to a business classification in 1959, just three years before plaintiffs sought a similar classification for their own property." In discussing this area not a single expert characterized it as essentially and basically residential. The Nelson property lay vacant for about ten years and was never utilized as residential property. Thirty-six percent of the reclassification in the area has been from residential to commercial. We cannot from this record find that the Village has maintained either uniformity or a long established adherence to its residential classification. It has repeatedly pierced the perimeter. Nelson has purchased the property north of Blair and as stated by its planner in the record "it was done to create a buffer between the Blair property and any other owner". It is idle to talk about a difference of opinion as to the effect upon the public welfare, benefit, morals or safety of this Village other than the fact that vehicular traffic on I-Oka may—and we use the term "may" advisedly as it is purely speculative—be increased somewhat, but it is obvious that it cannot be increased by any great surge of vehicular traffic. The trial court found the ordinance to be a taking of the plaintiff's property without just compensation, that the present restriction did not bear any reasonable relationship to the health, safety, welfare or morals of the Village and that the property has been sold to Nelson "contingent upon proper authority to use said real estate for the off-street parking of motor vehicles on a nonfee basis to service the Nelson office building which adjoins the subject property to the east". This finding is not against the manifest weight of the evidence. There is little doubt that the special use permitted by the trial court is in keeping with *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill.2d 370, 167 N.E.2d 406, where the Supreme Court stated in substance that the decree should be framed

to comply with the proposed specific use of the property. There is no question on this record that the proposed use is an addition to the parking facilities of the Nelson property and as such there is no rezoning but a limited variation and any alteration or change from this proposed user will under the language of Sinclair require further action by the legislative body.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Judgment affirmed.

TRAPP, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN dissenting:

I cannot agree with the conclusion reached by my colleagues.

Courts are not to interfere with the discretion of legislative bodies charged with zoning and limiting the use of property except where there is a clear abuse of discretion. A zoning ordinance is clothed with a presumption of validity and it is incumbent upon one who attacks the ordinance to establish by clear and convincing evidence that, as applied to him, the ordinance is arbitrary and unreasonable and without substantial relation to the public health, morals, safety and welfare. As I view this record, it falls short of meeting this condition precedent to judicial interferrence.

At most, this record establishes a difference of opinion or presents a debatable issue, and that is not sufficient to establish the ordinance to be clearly unreasonable. *Bennett v. City of Chicago* (1962), 24 Ill.2d 270, 181 N.E.2d 96; *Trendel v. County of Cook* (1963), 27 Ill.2d 155, 188 N.E.2d 668; *Fox v. City of Springfield* (1957), 10 Ill.2d 198, 139 N.E.2d 732.

I agree with the majority that the decree of the circuit court is within the admonitions found in *Sinclair Pipe Line Co.* and in *Treadway*, cited in the majority opinion. While the decree may not be subject to the procedural defects urged by the appellant, the record, as I view it, is insufficient to warrant the conclusion that the ordinance is invalid.

Blair purchased his property knowing of the then zoning classification applicable to it. That classification remains unchanged. The area to the south has become commercialized. Golf Road, which divides the commercial zoning area from the single-family residential area of which the Blair property is part and parcel, has become improved and handles substantially more traffic. The previously vacant Nelson lot has become improved with a commercial building. The plaintiff's property, if rezoned, is worth some fifteen thousand dollars more than if left alone

and in its present zoning classification. The question this record presents is whether these facts, either alone or in the aggregate, invalidate the zoning classification, or whether these facts present the plaintiff with a limitation as to the use of this property so unreasonable as to reach constitutional proportions.

We must be mindful in our examination of this issue that while Blair is the beneficial owner of the property, Nelson is its contemplated purchaser in the event of rezoning. I am unable to accept as persuasive the reasoning of the majority that the change in zoning on the property immediately to the east (the Nelson property) is of sufficient detriment to Blair as to make a single-family residence classification invalid when, in fact, the owner of the Nelson property will benefit from the judicially imposed change. To so reason permits the owner of the Nelson property to expand a use criticized by the majority. Invalidating this ordinance as to the Blair property for the benefit of the Nelson property, based upon the offensive use as to the Nelson property, permits a boot-strap operation to succeed.

The Blair property can be used and does have substantial value when used as a single-family residence as it is now zoned.

In the majority opinion it is emphasized that the Village of Mount Prospect has zoned the property south of Golf Road for commercial use and it is indicated that that action of the Village somehow aids the plaintiff in this proceeding. This is apparently premised upon a judgment that Golf Road is an inappropriate line of demarcation between zoning areas.

It is a matter of judgment whether a zoning line should be drawn at streets, alleys or property lines, but it is clear, first, that they have to be drawn someplace, and secondly, that there will be unhappiness with the location wherever drawn. We have many cases, however, to the effect that a street may be a proper line between zoning districts, particularly where the street is wide and heavily traveled. In *Rebman v. City of Springfield* (4th Dist. 1969), 111 Ill.App.2d 430, 438, 250 N.E.2d 282, 286, we noted:

"* * * Obviously, in establishing zoning areas and the limitations on land use, lines of demarcation between permitted uses have to be drawn someplace—whether a street or an alley or along natural barriers such as lakes or rivers. We know of no judicially imposed requirement that such lines of demarcation be alleys as distinguished from streets, or vice versa. The Supreme Court has recognized that a street may be a proper line between zoning districts, especially where the street is wide and heavily traveled. *La Salle Nat. Bank v. City of Chicago*, 6 Ill.2d 22, 126 N.E.2d 643 (1955); *Mundelein Estates, Inc.*

*v. Village of Mundelein*, 409 Ill. 291, 99 N.E.2d 144 (1951); see also: *Northern Trust Co. v. City of Chicago*, 4 Ill.2d 432, 123 N.E.2d 331 [*sic*, 330] (1955 [*sic*, 1954]); *Davis v. City of Rockford*, 60 Ill.App.2d 325, 208 N.E.2d 110 (2nd Dist. 1965); *Reese v. Village of Mount Prospect*, 72 Ill.App.2d 418, 219 N.E.2d 682 (1st Dist. 1966) [(abst.)]; *Gans v. City of Chicago*, 102 Ill.App.2d 456, 243 N.E.2d 400 (1st Dist. 1968)."

Further, in *Urann v. Village of Hinsdale* (1964), 30 Ill.2d 170, 195 N.E.2d 643, the Supreme Court recognized the validity of drawing a zoning line along a railroad track separating an industrial from a residential area, and held that plaintiff had not there overcome the presumption of validity. Likewise, a toll road serving as a line of demarcation was sustained in *La Salle Nat'l. Bank v. Village of Western Springs* (1964), 30 Ill.2d 340, 196 N.E.2d 680. An even less desirable fact situation, so far as a property owner is concerned, is represented by *Maywood Proviso State Bank v. Village of Berkeley* (1st Dist. 1965), 55 Ill.App.2d 84, 204 N.E.2d 144. Thus, when a zoning line has to be drawn, in the absence of a clear showing that the line bears no reasonable relationship to the public health, safety or welfare, or a showing that it is capricious or unreasonable, there should be no judicial interference simply because there is a difference of opinion.

This record indicates that should the Blair property be rezoned, then a single-family residential neighborhood of which it is a part would, under any logical extension of that rezoning, be eroded by commercial intrusions. It is within the legislative authority to preserve and protect against such erosion. Such protection is patently related to the public health and welfare. The ordinance in this case has that protective effect. Under such circumstances the circuit court was in error in substituting its judgment for that of the legislative body. I would reverse.