**M & N Enterprises, Inc., an Illinois Corporation, Joseph W. Miloncus, et al., Plaintiffs-Appellees, v. City of Springfield, a Municipal Corporation, Defendant-Appellant, Illinois State Historical Society and The Abraham Lincoln Association, Amicus Curiae.**

Gen. No. 11,134.

Fourth District.

August 12, 1969.

Robert C. Walbaum and Ines C. Hoffmann, of Springfield, for appellants.

Edward Casey, of Springfield, for appellees.

Sorling, Catron and Hardin, of Springfield (Charles H. Northrup and Richard E. Hart, of counsel), for amicus curiae.

CRAVEN, J., delivered the opinion of the court.

This zoning case involves the same statutes and the same zoning ordinances as those discussed in Rebman v. City of Springfield, 111 Ill App2d 430, 250 NE2d 282, filed concurrently with this opinion. The order of the Supreme Court transferring the case is the same as the order in Rebman.

The Rebman case and this one involve all of the property on the west side of Ninth Street from Edwards to Jackson Streets in the City of Springfield. The lots involved here are located to the north of the Rebman and Page lots discussed in the Rebman opinion.

M & N Enterprises, Inc., an Illinois corporation, in which the plaintiff Joseph W. Miloncus is the principal stockholder, purchased the southernmost lots—Lots 12, 13 and 14—in 1956, for a sum "in the neighborhood of $27,000.00." The lots were then improved with residences and then zoned as "B" Residence District. These lots were rezoned in 1956 to "C" Commercial Area, "C" Area District. Under this rather broad business classification commercial buildings were allowed to occupy the entire area of the lots.

An automatic car wash was built on Lot 12. Lot 13 was paved for parking and for access drives. Lot 14 was used to construct a store building for the sale and installation of automobile seat covers. These corporate enterprises were ultimately owned by Mr. Miloncus.

In February of 1963, Mr. Miloncus and his wife purchased on contract for deed Lot 16—the lot on the southwest corner of Ninth and Jackson—at an indicated purchase price of $32,500. The lot was improved with two apartment houses. It was zoned "B" Residence Use District, "C" Area, and subject to an 85-ft. height district

limitation under the then applicable 1924 zoning ordinance.

In December of 1965, Mr. Miloncus obtained an option to purchase Lot 15 from the plaintiffs Robert and Wilma Holvey for the sum of $40,000. This lot is improved with a residence converted to apartments. On the rear of the lot is a small garage of cement block construction used as an automobile repair shop. The zoning on this lot was and is the same as on Lot 16. The option was conditioned upon rezoning of the optioned lot so as to permit its use for a motel-hotel complex.

In March of 1966, Mr. Miloncus filed a petition to rezone Lots 12 through 16, inclusive, from the then zoning classifications to a classification known as "C-2" Commercial Use, "D" Area, with a 125-ft. height district limitation, or as an alternative, to the rezoning for a use variance so as to permit construction of the motel. The Zoning Board recommended a reclassification except for a height limitation of 45 feet. The City Council denied the reclassification and the plaintiffs instituted this proceeding. The complaint was filed June 21, 1966.

On June 28, 1966, the City Council adopted a new comprehensive zoning ordinance. The four-block area around the Lincoln Home, which included the plaintiffs' property, was placed in a district designated as "H-1" Historical District. The height restriction on buildings in the district is placed at 35 feet and the uses permitted include residences, churches, publicly owned information centers, auditoriums, historical museums and professional, governmental, or business offices, but not including retail sales. Architectural controls applicable to the area first imposed in 1961 were continued under the 1966 ordinance.

The zoning and use of the area surrounding the Historical District are detailed in our opinion in Rebman, and although applicable here, we see no need for repetition.

The original complaint was amended setting forth the zoning change by the 1966 ordinance, alleging that the new classification as to the plaintiffs' property was invalid and unconstitutional and constituted a confiscation of the plaintiffs' property without just compensation. The pleadings were further amended in February of 1968, reciting an application in October of 1967 for a conditional permitted use and variance to construct a commercial wax museum and a gift shop on the premises. It was alleged that the sought conditional permitted use would have exterior architectural features appropriate to the district and that the use was approved by the Zoning Board and the Historical Sites Commission. There is no allegation that this use was expressly approved or disapproved by the City Council. That body acted only by adopting a resolution reaffirming a policy aimed at eliminating commercial activity in the Lincoln Home Area.

A stipulation by M & N Enterprises, Inc., and the City of Springfield is in the record. That stipulation reads as follows:

"Plaintiffs on October 2, 1967 filed with Defendant an application for conditional permitted use and variance. Said application sought authorization to construct and operate a commercial wax museum and gift shop on the premises here involved. The structure to house such commercial wax museum and gift shop were [sic] represented to have exterior architectural features appropriate to the H–1 Historical District. Plaintiffs appeared before the Zoning Board of Appeals and the Historical Sites Commission of the Defendant. On or about November 14, 1967 the City Council of the Defendant adopted a resolution proclaiming the Council's policy of ultimate elimination of private commercialization in the H–1 Historical District. The City Council has taken no action on plaintiff's [sic] aforesaid application although the recommendations of the Zoning Board of

Appeals and Historical Sites Commission were both submitted by December 5, 1967."

As to Lots 12, 13 and 14, the trial court found the "H–1" Historical District zoning to be arbitrary, unreasonable and confiscatory and that it bears no substantial relationship to public health, safety, morals, comfort and welfare, and further found that the plaintiffs proposed to raze the present improvements and construct and operate a motel on the property or in the alternative to construct and operate a commercial wax museum and gift shop, both of which uses were found to be appropriate and reasonable for the property. It therefore enjoined the defendant from enforcing the zoning regulations on the property so far as they related to those proposed uses and "further enjoined to grant such licenses and permits that might be otherwise required for such construction and use."

As to Lot 15, the Historical District regulations were found to be unconstitutional, null and void, and the same order as to prospective use was entered. The same order applied to Lot 16.

All that we have said in Rebman as to the validity of the Historical District zoning classification is applicable here, and for the reasons there stated the decree of the Circuit Court of Sangamon County is reversed.

 Insofar as the decree relates to the proposed construction on all five lots of a motel-hotel complex, it is clear that such a use is in contravention of the existing zoning and the existing nonconforming use, and the legislative classification by the municipality is not shown to be either confiscatory or unreasonable.

As to the proposed use for a commercial wax museum and gift shop, it is not established by the record whether such proposed use has or has not been authorized by the City Council. It is clear that without a zoning reclassification such a use on either Lots 15 or 16 would be and

448

is prohibited by the existing zoning. Such use on Lots 12, 13 or 14 could possibly be a permitted nonconforming use of no greater magnitude than the existing nonconforming use as to these lots. The 1966 zoning ordinance does establish a procedure for change, enlargement and extension of nonconforming uses and sets out the detailed requirements for such change. There being nothing in the record of any action for change, enlargement or extension of the nonconforming use as to Lots 12, 13 and 14, there is no issue here for review as to the use of those lots for a wax museum or gift shop.

Here, as in the Rebman case, there is valuation testimony that establishes, indeed without contradiction, that these five lots would have substantially more value if uses were permitted beyond the scope of the Historical District classification. The fact that property would have more value if a more intense use were to be permitted is, of course, an item to be considered in a zoning case. In addition to that which we have observed as to Lots 12, 13 and 14, Lot 15 is now being used as a residence, and the 1966 zoning can hardly be described as a substantial change from the 1924 zoning applicable to this lot. The evidence indicates that the plaintiffs Robert and Wilma Holvey purchased this lot in 1941 for some $5,000. The testimony as to its value under the Historical District zoning indicated a value some five times that figure and the option to sell it to the plaintiff Miloncus specified a purchase price of $40,000, subject, of course, to a change from the 1924 zoning classification of "B" Residence. The same observations may be made as to Lot 16 which was purchased under a contract for deed in February of 1963 under a "B" Residence zoning classification at $32,500. Since in our view the Historical District Zoning classification does not amount to a more restrictive classification than "B" Residence, applicable to these lots, this ordinance can

hardly be said to be confiscatory. See Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201 (1963).

■■ As we stated in Rebman, there is a presumption of validity in all cases involving a zoning ordinance. Judicial intervention in zoning matters must be predicated only upon a record that establishes by clear and convincing evidence that the ordinance as applied to the plaintiffs is arbitrary and unreasonable and has no substantial relationship to the public health, safety, and welfare. La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65 (1957). In the Standard Bank case, the Supreme Court stated:

> "Plaintiff urges that the findings of the trial court cannot be disturbed unless contrary to the manifest weight of the evidence. We agree that this is the rule. It is, however, clear to us that the evidence, when viewed most favorably to plaintiff, falls far short of overcoming the presumptive validity of the ordinance. At best, it accommodates a legitimate difference of opinion as to the reasonableness of the ordinance, and, under such circumstances, the legislative judgment must prevail." Standard State Bank v. Village of Oak Lawn, 29 Ill 2d 465, 471 (194 NE2d 201, 204–205 (1963)).

The action of the Legislature in the passage of the historical sites legislation (Ill Rev Stats 1967, c 24, par 11–48.2–1) essentially created a new concept of public welfare and is a specific declaration by the Legislature that preservation and enhancement of historical areas is within the concept of the exercise of police powers for the public welfare. The creation of an "H–1" Historical District in the four-block minimum area around the Lincoln Home, obviously, is aimed at fulfillment by the municipality of the concept authorized by the Legislature. From our review of this record, we must conclude

that the enhanced value of the plaintiffs' property is directly related to this action by the municipality. The proximity of the property to the Lincoln Home increases its value, and yet it is clear that use not in conformity with the existing zoning would be detrimental to the Lincoln Home Area and the total concept of the municipality relating to historical preservation. When property has an enhanced value by reason of planning and zoning for historical preservation, the zoning ordinances to implement the planning can hardly be said to be confiscatory or unreasonable or unconstitutional simply because the owners seek to use it for commercial purposes to exploit the visitors and tourists attracted, in part at least, by the creation of the Historical District. The decree of the Circuit Court of Sangamon County, insofar as it purports to authorize the construction of a motel-hotel complex on the five lots here involved, is reversed and the cause is remanded with directions to enter judgment for the defendant as to that proposed use. Insofar as the decree purports to authorize the construction and operation of a commercial wax museum and gift shop on any portion of Lots 15 and 16, the decree is reversed and the cause is remanded with directions to enter judgment for the defendant. That portion of the decree which purports to authorize the construction and operation of a commercial wax museum and gift shop on Lots 12, 13 and 14 is vacated and the cause is remanded to the Circuit Court of Sangamon County with directions to dismiss the complaint for want of equity insofar as it relates to that use on those lots.

Reversed and remanded with directions.

TRAPP, P. J. and SMITH, J., concur.