Gabrielli, J.
The question, as we choose to frame it in this case, is whether that part of the New York City Landmarks Preservation Law which purports to give the Landmarks Preservation Commission the authority to infringe upon the free use of individual premises remaining in private ownership is a valid use of the city’s police power in cases where an owner organized for charitable purposes demonstrates hardship, economic or otherwise. Present also are procedural issues involving the nature of this action .and the scope of judicial review exercised by the courts below.
The statutory scheme can be outlined as f ollows: By amendment to the New York City Charter and Administrative Code (ch. 8-A) the Landmarks Preservation Commission was created and given the power to designate historic districts and also to designate individual properties as historic landmarks. We are here concerned with the latter aspect. Based on the statutory scheme, designations can be made after notice and a public hearing (Administrative Code of City of New York, ch. 8-A, § 207-2.0, subds. a, c; § 207-12.0), but in determining whether or not to make the contemplated designation “ the commission * * # shall not be confined to consideration *124 of the facts, views, testimony or evidence submitted at such hearing.” (§ 207-12.0, subd. b.) Should the owner of a building which has been designated a landmark desire to alter or demolish it, application may be made to the commission for such permission (§ 207-5.0, subd. a) which quite probably would not be forthcoming in cases where demolition is sought. It is further provided that the owner is expected to realize at least a 6% return on his property (§ 207-1.0, subd. q) and if he proves economic hardship by the fact of a lesser return the commission is given discretion to ease the hardship by effectuating a real estate tax rebate (§ 207-8.0, subd. c), or the commission is afforded the additional right of producing a buyer or lessee who could profitably utilize the premises without the sought for alteration or demolition (§ 207-8.0, subd. a, par. [2]; subd. i); and then, should these remedies prove unrealistic or unobtainable the city, if it desires the preservation of the property enough, is given the power to condemn (§ 207-8.0, subd. g, par. [2]).
Plaintiff, a religious corporation, not subject to the ameliorative provisions of section 207-8.0 just noted, alleged in its complaint that it is the owner of certain land at the corner of Madison Avenue and 37th Street in New York City, improved with a residential building which had been previously converted to use for offices for plaintiff’s corporate-religious purposes. The property was purchased in 1942 by plaintiff’s predecessor, The United Lutheran Church in America, it having been used since its construction in 1853 until that time as a residence. In November, 1965 the commission designated plaintiff’s building a “ landmark ”, the consequence of which is that by reason of the Landmarks Law plaintiff could not alter or destroy the structure without the commission’s approval. The structure involved, not included as a part of any landmark district, is situated in midtown Manhattan surrounded by a variety of structures including modern multistory office, apartment and other commercial structures. It appears undisputed that plaintiff’s office space requirements increased to such an extent that, even with the addition of a brick wing in 1958, the building became totally inadequate. In addition, prior to the enactment of the Landmarks Law plaintiff had engaged an architect who had prepared sketches of a new building to be erected upon *125 demolition of the existing building and these sketches had been presented to plaintiff during the summer of 1965.
On the basis of these facts the complaint spells out five causes of action.[1] The remedy sought on the basis of any or all of those causes of action is a judgment declaring the subject designation void either because the Landmarks Law is void on its face, or void as applied to plaintiff.
In response to these causes of action, the answer submitted by the city and the commission states generally a lack of knowledge or information sufficient to form a belief concerning most of plaintiff’s factual allegations. Then, as a “ defense ”, it is alleged that the subject property is zoned residential; that an exhaustive study was made of the subject building which had been the home of J. P. Morgan, Jr.; that a public hearing was held on the question in September, 1965 notice of which was received by plaintiff which, in fact, appeared through counsel who spoke against the designation; and that the commission, after considering all the evidence, found, that the property has importance “ because it was the residence of J. P. Morgan, Jr. during the first half of the twentieth century, that the house is significant as an early example of Anglo-Italiante architecture, that it is one of the few free standing Brownstones remaining in the City, that it displays an impressive amount of fine architectural detail and that it is a handsome building of great dignity.” It was finally alleged that plaintiff’s complaint, *126 rather than starting an action, really commenced a proceeding against a public body which was untimely by reason of the four-month time limitation in CPLB 217. Despite this allegation and without benefit of a counterclaim, defendants then sought judgment declaring the constitutionality of the Landmarks Law generally and this designation in particular.
A brief procedural history is in order. Special Term ruled that the four-month time limitation applicable to article 78 proceedings barred this declaratory judgment action,. The Appellate Division, First Department, reversed and denied the motion on the ground that plaintiff nowhere in its complaint sought a review of the commission’s factual determination but, rather, confined its attack to the constitutional aspects of the designation; and that because of this the remedy of declaratory judgment was perfectly appropriate. The court also stated, inter alia: “ Where an administrative act is attacked on the basis that the body acted without power and its decision is void, the remedy of a declaratory judgment is not foreclosed by the circumstances that a hearing was had, that a determination was made and that a proceeding was available to the party affected to review such determination. The exercise of a power which offends against the Constitution may be attacked at any time.” (27 A D 2d 237, 239.)
On remand a hearing was held at Trial Term at which both parties simply expanded on the themes set up in the pleadings. Plaintiff’s evidence was confined to the nature of its work, its space requirements, the inadequacies of the existing space, its plans to rebuild, and the impact of the designation on all of this. The only-inroad made upon plaintiff’s position in these respects was that it was shown that the premises were not zoned for the contemplated office building; a point we deem irrelevant to the issues before us. At the outset of defendants ’ case counsel for defendants commenced proof on the question whether the designation was reasonable in light of the building’s history and design. Plaintiff’s counsel complained that the reasonableness of the designation was not in issue since this was an action to test the commission’s power to make the designation. This objection was overruled whereupon the defense produced a quantity of evidence tending to support the reason why the Morgan house was designated a landmark, i.e., because of the *127 illustriousness of the families who lived there (before Morgan, Jr., the Phelps-Dodges) and because the house provided the only remaining example of the free standing Brownstone typical of the era. None of defendants’ witnesses, however, testified that this house was an architectural masterpiece, nor was there any evidence that any significant historical event ever took place therein.
The court, in apparent disregard of the intermediate Appellate Division ruling that this was a declaratory judgment action based solely on questions of constitutional law, perpetuated the course opened up during the trial when he allowed defendants to produce evidence justifying the designation, by holding that it was unnecessary to deal with the constitutional questions since he found the designation unjustified as a factual matter. He added that it stretched credibility to believe that this much altered structure contributed toward the character, business, government or culture of the city and ruled the designation to be without any reasonable basis.
On reappeal, the Appellate Division affirmed by a divided court, but held unanimously that the substantial evidence test applied. The dissenter also stated that the constitutional issues had been decided against the plaintiff by the court’s holding in Matter of Trustees of Sailors’ Snug Harbor v. Platt (29 AD 2d 376). While the majority agreed that the substantial evidence test applied, they found that there was no substantial evidence to support the commission’s determination. It was also noted by the majority that “ this action was converted by defendant commission’s own conduct of the case from a declaratory judgment action, addressed to the constitutionality of the Landmarks Preservation Law * * * to one challenging the commission’s designation of the subject building as a landmark.” Prom this we gather that what started as a declaratory judgment action changed to an article 78 proceeding because of defendants’ insistance on proving the facts; and we can further infer that by so doing defendants must have waived reliance on the four-month Statute of Limitations which had been at issue on the previous appeal.
We find no justification for both courts having converted this action into a proceeding. Plaintiff started this as a declaratory judgment action and adhered to that theory, as reinforced by *128 the intermediate Appellate Division determination, even when defendants and both courts insisted on altering the form of the action into a proceeding where the reasonableness of the designation would' become a factor.[2] Since this is not a case where the constitutional questions have not before been raised, we see no obstacle to our passing on them for the first time.[3] We may surmise that defendants chose to attempt justification of the designation and perhaps denigrate plaintiff’s argument that in light of its dire need to rebuild, the designation was unduly restrictive. Since plaintiff’s proof of economic hardship is substantially unchallenged we perceive that we have only questions of law and that we should decide them.
Government interference with an owner’s use of private property under the police power runs the gamut from outright condemnation for which compensation is expressly provided to the regulation of the general use of land remaining in private ownership so that the use might harmonize with other uses in the vicinity. No compensation is awarded in the latter situation since there is no taking. Also, of course, where property is being put to a noxious use such use can be enjoined under the common-law doctrine of nuisance and, again, no compensation would be due, the injunction having been for the common good and there having been no specific taking. Such government interference as just described is based on one of two concepts — either the government is acting in its enterprise capacity, where it takes unto itself private resources in use for the common *129 good, or in its arbitral capacity, where it intervenes to straighten out situations in which the citizenry is in conflict over land use or where one person’s use of his land is injurious to others. (Sax, Taking and The Police Power, 74 Yale L. J. 36, 62, 63.) Where government acts in its enterprise capacity, as where it takes land to widen a road, there is a compensable taking. Where government acts in its arbitral capacity, as where it legislates zoning or provides the machinery to enjoin noxious use, there is silnply noncompensable regulation.
What do we have in the case before us where title remains in private hands and where the government regulation which severely restricts the use to which the property may be put is neither in pursuance of a general zoning plan, nor invoked to curtail noxious use?
A zoning ordinance in order to be validly applied cannot, for one thing, serve to prohibit use to which the property is devoted at the time of the enactment of the ordinance (see 1 Anderson, New York Zoning Law and Practice [2 ed.], § 6.01 et seq.). Here, plaintiff has submitted ample proof not seriously contested, that the use to which the property has been put for over 20 years Would have to cease because of the inability under the designation to replace the building. Also, and of chief importance, zoning is void if confiscatory. In Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493, 498, 499) it is stated: “ However compelling and acute the community traffic problem may be, its solution does not lie in placing an undue and uncompensated burden on the individual owner of a single parcel of land in the guise of regulation, even for a public purpose. * * * Under such circumstances, the 1927 zoning ordinance and zoning map and the 1952 amendment, as they pertain to the plaintiff’s property, are so unreasonable and arbitrary as to constitute an invasion of property rights, contrary to constitutional due process and, as such, are invalid, illegal and void enactments (U. S. Const., 5th and 14th Amendts.; N. Y. Const., art. I, §§ 6, 7 [citations]) ”.
Pertinent also is Morris County Land Improvement Co. v. Township of Parsippany — Troy Hills (40 N. J. 539) where, by way of a series of zoning amendments, the township regulated plaintiff’s vacant land to the extent it limited the use to which it could be put to public recreational, wildlife sanctuary and *130 township sewage treatment plant uses. The net effect of the municipality’s actions in that case was to make the subject property an adjunct of the town’s park and utility systems and the land had, to a great extent, been added to the municipality’s resources in several of its enterprise capacities, despite the facade of mere regulation (Sax, Taking and The Police Power, 74 Yale L. J. 36).
In the instant case it could likewise be well argued that the commission has added the Morgan house to the resources of the city by the designation (it being argued, inter alia, that the house, as a tourist attraction because of its designation, aids the city generally), and that while such designations might not wreak confiscatory results in all situations (as where business might well be promoted by the designation) it does have that effect here where plaintiff is deprived of the reasonable use of its land.
This court has stated that “ [i]t is not necessary, in order to render a statute obnoxious to the restraints of the Constitution, that it must in terms, or in effect authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and, enjoyment or the power of disposition at the will of the owner ” (Forster v. Scott, 136 N. Y. 577, 584; see, also, Matter of Keystone Assoc. v. Moerdler, 19 N Y 2d 78, 88).
The similarity between Matter of Keystone Assoc. v. Moerdler and Forster v. Scott on the one hand and this case, on the other, is that in all of them title and use! remained in the record owner. But free use was so severely restricted as to be confiscatory. The factor common to the Matter of Keystone Assoc. v. Moerdler and Forster v. Scott cases, not found in the instant case, is that in those cases the de facto taking was linked to an avowed taking statute. Here, the Landmarks Law is not such and would not necessarily work such results in all cases. Defendants put tremendous emphasis on the point that here we see a valid exercise of the police power, not the exercise of the power of eminent domain. However, the Vernon Park Realty ease (307 N. Y., at p. 499, supra), clearly tells us that when police power regulation becomes confiscatory it loses5 its validity. Sax pointed this out in his analysis of the kind of power being utilized. So also does Justice Holmes in Pennsylvania Coal Co. v. Mahon (260 U. S. 393), a case where the Legislature was actually trying to *131 prevent loss of lives and property by regulating the operation of mines under city streets. It was held that the act could not be sustained as an exercise of the police power so far as it affected rights previously acquired to mine coal. “ The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.” (260 U. S., at p. 415; see, also, 1 Anderson, New York Zoning Law and Practice [2d ed.], § 2.15.)
The decision in Matter of Trustees of Sailors’ Snug Harbor v. Platt (29 A D 2d 376, supra), although inconclusive on the question of confiscation since further facts had to be developed, is correct in refusing to declare the entire law unconstitutional on its face. The question posed there was whether in that instance' regulation went too far. The buildings there sought to be preserved had become inadequate for their charitable purpose and were to be replaced. The Appellate Division ruled that where designation would prevent or seriously interfere with the carrying out of the charitable purpose it would be invalid. That is a simple enough concept and ought to apply here.
The landmark preservation problem has received considerable comment[4] the net effect of which is general agreement that attempts to designate individual landmarks in high economic development areas is fraught with trouble (see, especially, Costonis, The Chicago Plan: Incentive Zoning And The Preservation of Urban Landmarks, 85 Harv. L. Rev. 574; Wolf, The Landmark Problem in New York, 22 Intramural L. Rev. of N. Y. U. 99).
As noted in the dissent, the statutory scheme (virtually all of § 207-8.0), providing for alternate proposals and perhaps ultimate condemnations in eases where economic return is insufficient or where there is no wish by the owner to sell or lease the property, is not applicable here. Plaintiff is a charitable *132 organization and not otherwise subject to the various administrative alternatives set up in section 207-8.0 which could result in condemnation of the property sought to be altered,or demolished. We save for another day consideration of those provisions where sought to be ápplied. What has occurred here, however, where the commission is attempting to force plaintiff to retain its property as is, without any sort of relief or adequate compensation, is nothing short of a naked taking. As in the New Jersey Parsippany case (40 N. J. 539, supra), the commission, without any move toward invoking the power of eminent domain, is attempting to add this property to the public use by purely and simply invading the owner’s right to own and manage. Legitimate zoning stops far short of this because it does not appropriate to public use. Where the owner can make a case for alteration or demolition the municipality would have to relinquish the designation, provide agreeable alternatives or condemn the premises.
Such a case has been alleged and proved here, contrary to assertions in the dissent, and standards substantially unrebutted by the defendants. It is uncontested that the existing building is totally inadequate for plaintiff’s legitimate needs and must be replaced if plaintiff is to be able freely and economically to use the premises especially as it appears that adjoining structures have been integrated with plaintiff’s operation. The power given the municipality to force termination of plaintiff’s free use of the premises short of condemnation (which would provide compensation for plaintiff’s complete loss) directly violates plaintiff’s rights under the Fifth and Fourteenth Amendments to the United States Constitution, and sections 6 and 7 of article I of the New York Constitution. As in Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493, supra) we find a situation exceeding the permissible limits of the zoning power.
The order appealed from should be modified, with costs, to the extent that the landmark designation as here applied is declared to be confiscatory.

. The first is an asserted breach of the First Amendment of the United States Constitution and article I of the New York State Constitution in that the designation interferes with plaintiff’s right to free exercise of religion. The second is an asserted breach of plaintiff’s right to procedural due prdcess in that the statute fails adequately to preserve its right to be heard, lodges total discretion in the commission to make designations, deprives plaintiff of the free use of its property and would require plaintiff to spend considerable amounts of money for maintenance and repair for which no compensation is provided for, for the breach of which criminal penalties are prescribed. Third, plaintiff’s equal protection rights are assertedly violated because for the taking of its property no compensation is provided, while for other takings engaged in by the municipality compensation is awarded. Fourth, the Landmarks Law is assertedly deficient in its failure to prescribe adequate standards to guide the commission. And fifth, the designation of plaintiff’s property is a breach of substantive due process in that it is a confiscatory use of the police power prohibited by the New York State Constitution.

. Even had this action been properly converted to a proceeding the Appellate Division was in error in applying the substantial evidence test. Landmark designations are clearly administrative and not quasi-judicial in nature and as such would be reviewable under CPLR 7803 (subd. 3), where error of law, arbitrariness or capriciousness or abuse of discretion (i.e., reasonableness) defines the scope of review. The public hearing provided for in the Landmarks Law is not the sort of adversary hearing involving cross-examination and the making of a record as is contemplated under CPLR 7803 (subd. 4), where substantial evidence is the test set forth. We note that this misinterpretation was also applied in Matter of Manhattan Club v. Landmarks Preservation Comm. (51 Misc 2d 556).

. Although expressly basing his decision on the unreasonableness of the designation, the Trial Justice did also cite Pennsylvania Coal Co. v. Mahon (260 U. S. 393, 415-416) to the effect that there was here an undue restraint on the use of private property.

. J. Morrison, Historic Preservation Law (1965); Wolfe, Conservation of Historic Buildings and Areas — Legal Techniques, 2 A. B. A. Section on Real Property, Probate & Trust Law Proceedings 18; The Police Power, Eminent Domain, and the Preservation of Histprie Property, 63 Col. L. Rev. 708; Wolf, The Landmark Problem in New York, 22 Intramural L. Rev. of N. Y. U. 99; Lankmark Preservation Laws: Compensation for Temporary Taking, 35 TJ. of Chicago L. Rev. 362; 1 Rathkopf, Law of Zoning and Planning, 1973 Cum. Supp., pp. 11-17; 1 Anderson, New York Zoning Law and Practice (2d ed.), § 8.48.