D. Vincent Cerrito, J.
Prefatorily, in a decision dated May 2, 1974, this court determined that the petition herein contained two causes of action. The first brought pursuant to CPLR article 78 and the second, one for a declaratory judgment wherein the petitioner seeks a declaration that article 27 of the Executive Law is unconstitutional. This opinion is concerned solely with the first cause of action set forth in the petition.
In 1973, the Legislature adopted a land use and develop *101 ment plan submitted by the Adirondack Park Agency (Agency) (L 1973, ch 348). By this enactment, all lands within the Adirondack Park were classified and placed in certain land use areas (Executive Law, § 805). The main delineating factor between the various land use areas is the intensity of development that is permitted. For example, in hamlet areas there are no over-all intensity guidelines whereas in a low intensity area, the over-all intensity of development is not to exceed 200 principal buildings per square mile (Executive Law, § 805, subd 3, par c, cl [4]; § 805, subd 3, par e, cl [3]).
The petitioner is the owner of 55 of the 60 acres comprising Green Island, also known as Sagamore Island, located in Lake George near the Town of Bolton Landing, New York. This island has been classified and placed in a low intensity land use area. After an exchange of letters between the petitioner and Agency, the petitioner, on September 16, 1973, filed an amendment request to the Official Adirondack Park Land Use And Development Plan Map seeking to have the classification of Green Island changed from that of "low intensity” to that of "hamlet”. The map amendment request was denied, without a hearing, by the Agency on October 19, 1973. Thereafter, on December 12, 1973, petitioner commenced this article 78 proceeding alleging that the refusal of the Agency to grant its request was arbitrary, unreasonable, capricious, unconscionable and an abuse of its discretion.
In response to the petitioner’s allegations, respondents submitted an affidavit by George D. Davis, an assistant director of the Agency, who stated that "in view of the fact the apparent thrust of petitioner’s request was its contention that the original classification was erroneous — the Agency, at its meeting of October 18, 1973, — again reviewed the determinant data which related to Green Island. After said review and a discussion thereupon relating to the requested map Amendment, the Agency determined that its original determination had been correct and disapproved petitioner’s request for a Map Amendment.” The determinants used as a criteria for placing Green Island in the low intensity use area were soils; slopes; park character; public facilities and existing land use. It appeared to this court, from a reading of the Davis affidavit, that since sewage disposal was a factor in three of these determinants,[1] it was an important element contributing to the placement of *102 this island in a low intensity use area.[2] The petitioner claimed that this concern about sewage disposal was frivolous since it is a member of the Town of Bolton Sewer District, which district could provide a public sewage collection system for the island. To resolve this issue of fact, the court directed a trial de novo.[3]
At this trial, the evidence was that the Town of Bolton’s sewage disposal system is operating at capacity and could not handle the effluent flow from additional residential developments. The court has assumed that this was the situation in 1973 at the time the Agency made its decision because there was no evidence adduced to the contrary.
The petitioner contends that instead of limiting development by placing Green Island in a low intensity use area, the respondents could have relied on the Town of Bolton’s ordinances, which prohibit construction of private sewage disposal systems and require a permit to connect onto the municipal sewer system, to achieve this purpose. This is a decision that the Agency had to make and the court will not substitute its judgment for that of an administrative body as long as the administrative determination has a rational basis (Matter of Kaplan v McGoldrick, 279 App Div 615).
Here, the fact that the public sewage disposal system was operating at capacity provided the agency with a rational basis upon which to make its decision. Consequently, this court, upon the resolution of this issue and upon a review of the other determinants considered by the Agency, about which no issues of fact were raised, is of the opinion that the Agency’s determination not to grant petitioner’s map amendment request to have had a rational basis (see Matter of 125 Bar Corp. v State Liq. Auth., 24 NY2d 174). Accordingly, this cause of action is dismissed without costs.

. Soils; public facilities; existing land use.

. In his testimony at the hearing held herein, Mr. Davis indicated that the controlling factors in this case were the determinates of park character and existing land use, which are basically aesthetic in nature. Since it is still not settled whether aesthetics alone can support a zoning ordinance, the court considered it prudent to resolve the issue concerning the sewage disposal facilities (see Lutheran Church in Amer. v City of New York, 35 NY2d 121, 134, n 4).

. In its May 2, 1974 decision, the court characterized the Agency’s determination as administrative. While no hearing meeting due process standards need be held before an agency makes an administrative determination, issues of fact may be tried and decided de novo by the court (8 Weinstein-Korn-Miller, NY Civ Prac, par 7803.04, p 78-51).