161 N.J. Super. 256 (1978)
391 A.2d 577
HOBOKEN ENVIRONMENT COMMITTEE, INC. AND HELEN MANOGUE, PLAINTIFFS,
v.
GERMAN SEAMAN'S MISSION OF NEW YORK, A NEW YORK NON-PROFIT CORPORATION, AND SINGER'S SUPERMARKET, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 12, 1978.
*258 Mr. Norman L. Cantor for plaintiffs.
*259 Mr. J. Nicholas Suhr for defendant German Seaman's Mission of New York (Mr. Kurt E. Biedermann on the brief).
Mr. Benjamin Chodash for defendant Singer's Supermarket, Inc. (Messrs. Krieger & Chodash, attorneys).
KENTZ, J.S.C.
This case involves an attempt to restrain the demolition of an historical site located in Hoboken, New Jersey. Plaintiff Hoboken Environment Committee, Inc. (Committee) is a group of residents and taxpayers of Hoboken dedicated to the promotion and preservation of the historical, cultural and aesthetic assets of Hoboken. Plaintiff Helen Manogue is a resident and citizen of Hoboken and is the chairperson of the Committee. Defendant German Seaman's Mission of New York (Mission), a nonprofit corporation, is the owner of the premises in question located at 60-64 Hudson Street in Hoboken which are known as the German Seaman's Mission (Mission building). Defendant Singer's Supermarkets, Inc. (Singer) is the purchaser under contract of the Mission property.
The Mission building dates from 1907 and has a history of serving at various periods as a lodge and shelter for German seamen, as quarters for American soldiers and as a United States customs house. This building forms an integral part of the multi-ethnic heritage and history of Hoboken. It stands as a relic of the era in which Hoboken was a thriving seaport and a large German-American community.
Architecturally and historically, the Mission building is among the most prominent structures remaining from the past waterfront development in Hoboken. According to the testimony of Thomas M. Wells, an architect, the building is an example of Greek-revival design and is in good structural condition, with much of the original ornament and finishing in good or readily salvageable condition.
Defendants are currently seeking to demolish the Mission building. Plaintiffs wish to halt this on the ground *260 that demolition of this building would have a permanent adverse effect on plans for the restoration of the Erie-Lackawanna terminal located within direct sight of the Mission building[1] and for restoration and development of an historic district in the southern portion of Hoboken.
Plaintiffs appeared before this court on May 3, 1978 seeking a temporary restraining order enjoining the demolition of the Mission building pending the happening of certain events. In particular, there was pending in the Hoboken City Council a bill to create a Hoboken Historic District Commission, including the mechanics that which would limit destruction of buildings with historic and cultural significance, such as the Mission building. Additionally, an application had been filed and was pending before the Division of Parks, Forestry and Recreation of the State Department of Environmental Protection for designation of the Mission building as an official historical site to be listed in the New Jersey Register of Historic Places pursuant to N.J.S.A. 13:1B-15.128. Upon designation of a building as an historic site, public monies are available for the acquisition, restoration, preservation and maintenance of the building.
At the hearing on plaintiffs' application for a temporary restraining order[2] defendants informed the court that on May 3, 1978 the City of Hoboken had issued to the Mission *261 a permit to demolish the Mission building.[3] However, in order to enable the court to deliberate and investigate this case fully, a temporary restraining order enjoining demolition was issued to maintain the status quo. Peters v. Public Service Corp., 132 N.J. Eq. 500, 511 (Ch. 1942), aff'd per curiam 133 N.J. Eq. 283 (E. & A. 1943); see Fraxam Amusement Corp. v. Skouras Theater Corp., 113 N.J. Eq. 509, 511 (Ch. 1933).
Subsequently, defendants filed a motion returnable on the return date of the order to show cause seeking judgment on the pleadings, dismissal of the complaint and vacation of the temporary restraints. The issue of whether plaintiffs had standing to bring this action was argued on the return date but the court reserved decision on that question pending a further hearing on the application for preliminary restraints. On May 30, 1978 and June 6, 1978 this court heard further testimony and argument and again reserved decision in order that counsel could submit additional briefs.
Three laws are invoked for the basis of standing: N.J.S.A. 13:1B-15.128 et seq., N.J.S.A. 2A:35A-4 (Environmental Rights Act) and a Hoboken ordinance entitled "An Ordinance Establishing a Historic District Commission of the City of Hoboken, Providing for the Membership and Powers Thereof and Providing for the *262 Creation of Historic Districts Within the City of Hoboken" (Hoboken ordinance).
N.J.S.A. 2A:35A-4 permits
* * * [a]ny person [to] maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.
Although this statute grants liberal standing because "every person has a substantial interest in minimizing this condition" of polluting and impairing the environment, N.J.S.A. 2A:35A-2, it is clearly limited to destruction or harm to the natural environment as opposed to the destruction of historical buildings. Plaintiffs' reliance upon this statute is obviously misplaced.
Prior to considering any other basis for standing, certain additional facts must be noted. On May 4, 1978 the Mission building was approved by the State Review Committee for Historic Sites for listing on the State Register of Historic Places pursuant to N.J.S.A. 13:1B-15.129. Simultaneously it was nominated to the National Register of Historic Places. Furthermore, the Hoboken ordinance was passed on June 21, 1978.
Neither N.J.S.A. 13:1B-15.128 et seq. nor the Hoboken ordinance specifies who may enforce these laws. Both, however, set forth certain limitations on the use of historic sites. N.J.S.A. 13:1B-15.131 prohibits
* * * [t]he State, a county, municipality or an agency or instrumentality of any thereof [from] undertak[ing] any project which will encroach upon, damage or destroy any area, site, structure or object included in the Register of Historic Places without application to, and prior authorization or consent of, the Commissioner of Environmental Protection.
The Hoboken ordinance which creates an historic district that encompasses the Mission building (see Hoboken ordinance *263 § 1-3) provides that the Historic District Commission shall

* * * * * * * *
(3) Establish reasonable rules and regulations for the erection, alteration, restoration, demolition or use of buildings within historic districts and of historical landmarks [and]

* * * * * * * *
(5) Issue certificates of appropriateness as to exterior architectural features for the erection, alteration, restoration, demolition or use of buildings and structures within historic districts and historical landmarks, as the Commission shall deem in the best interest of same. [Hoboken ordinance § 1-6(a) (3), (5)][4]
The issue, then, is whether citizens and residents of a community or an organization which represents such individuals may bring an action to enjoin acts which are violative of legislation protecting historic sites and districts.
Historically this State has adopted "a liberal view on the issue of standing." Urban League of Essex Cty. v. Mahwah Tp., 147 N.J. Super. 28, 33 (App. Div.), certif. den. 74 N.J. 278 (1977); accord, Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 101 (1971) (incorporated, nonprofit tenant association granted standing to maintain action against landlord); see In re Quinlan, 70 N.J. 10, 34-35 (father of incompetent daughter granted standing to assert her constitutional rights), cert. den. Garger v. United States, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); Elizabeth Fed'l S. & L. Ass'n v. Howell, 24 N.J. 488, 503 (1957) (savings & loan association had standing to attack Banking Commissioner's grant of permission to another institution to establish branch office). This same liberal approach has been applied to zoning and land use cases. See, e.g., South Burlington Cty. NAACP v. *264 Mt. Laurel Tp., 67 N.J. 151, 159, n. 3 (both resident and nonresident individual minorities had standing to contest municipality's restrictive land use regulations), app. dism. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); Booth v. Rockaway Tp. Bd. of Adj., 50 N.J. 302, 305 (1967) (citizen and taxpayer had standing to challenge blacktop use under zoning ordinance); cf. Long Branch Div. of United Civic & Taxpayers Org. v. Cowan, 119 N.J. Super. 306, 308 (App. Div.) (citizen and taxpayer's organization permitted to bring suit to enjoin establishment of drug center in community), certif. den. 62 N.J. 86 (1972). Since "neighborhood aesthetics [are] integrally [related] to property values," Livingston Tp. v. Marchev, 85 N.J. Super. 428, 433 (App. Div. 1964), certif. den. 44 N.J. 412, app. dism. 382 U.S. 201, 86 S.Ct. 393, 15 L.Ed.2d 269 (1965), citizens and taxpayers of a municipality have been afforded standing to contest a land use which has "a potential impact on the integrity of the zoning plan and the community welfare" even in the absence of individualized injury. Booth v. Rockaway Tp. Bd. of Adj., supra, 50 N.J. at 305.
Although historic site or district designation differs in certain respects from zoning, see Penn Central Transport Co. v. City of New York, 42 N.Y.2d 324, 329-331, 397 N.Y.S.2d 914, 917-918, 366 N.E.2d 1271, 1274-1275 (Ct. App. 1977), aff'd ___ U.S. ___, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), such an exercise of police powers has been analogized to zoning legislation primarily because both involve limitations upon the use of private property. See, e.g., Lutheran Church in America v. City of New York, 35 N.Y.2d 121, 129, 359 N.Y.S.2d 7, 14, 316 N.E.2d 305, 310-312 (Ct. App. 1974); First Presb. Church of York v. City Council of York, 25 Pa. Cmwlth. 154, 360 A.2d 257, 260-261 (Cmwlth. Ct. 1976). Since the designation and protection of historical sites in a particular municipality likewise can have an effect upon the community welfare and the state and municipal plans for historic preservation, *265 cf. Booth v. Rockaway Tp. Bd. of Adj., supra, 50 N.J. at 305, the same standing principles as were set forth in the zoning cases should be applied here.
The facts reveal that plaintiff Helen Manogue is a citizen and resident of Hoboken. The demolition of the Mission building could have broad ramifications upon the efforts of the State and Hoboken to revitalize and preserve historical areas. This plaintiff is interested in assuring that the plans for the historic preservation of Hoboken are carried out. This interest, when coupled with the substantial public interest and the significant impact that demolition of the Mission building would have upon the state and municipal plans, gives her standing to bring this suit.
The standing of the Committee presents a slightly different issue. Defendants have argued that the holding in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), precludes this plaintiff from bringing this action. Sierra Club, a group interested in the conservation of national parks, game refuges and forests of the country, was denied standing under the Administrative Procedure Act to challenge federal approval of a skiing development in the Sequoia National Forest because there was no showing of individualized harm to itself or its members. Id. at 729-730, 734-735, 741, 92 S.Ct. at 1363-1364, 1366, 1369, 31 L.Ed.2d at 639-640, 643, 646. Although the Sierra Club case is similar to one at bar due to the aesthetic interests asserted in both cases, plaintiffs therein alleged violations of federal law and the matter was heard in federal court which has the "case or controversy" requirement.[5] "New Jersey is not ... bound by the federal rules of standing," especially where rights are being asserted under *266 state law. Urban League of Essex Cty. v. Mahwah Tp., supra, 147 N.J. Super. at 33. Accordingly, reliance upon Sierra Club is misplaced. See id.
The standing of a nonprofit association to litigate has been upheld in various contexts. See Crescent Park Tenants Ass'n v. Realty Equities Corp., supra, 58 N.J. at 111-112; N.J. Pharmaceutical Ass'n v. Furman, 33 N.J. 121, 123-124 (1969); N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, 22 N.J. 184, 196 (1956). See also South Burlington Cty. NAACP v. Mt. Laurel Tp., supra 67 N.J. at 159, n. 3, and Urban League of Essex Cty. v. Mahwah Tp., supra, 147 N.J. Super. at 35, where the courts refused to express opinions on the standing of the associations since individual plaintiffs were found to have standing. For federal decision on point issued prior to the Sierra Club opinion, see cases cited in Crescent Park Tenants Ass'n v. Realty Equities Corp., supra, 58 N.J. at 105-106.
In N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, supra, the court found that the state or county bar association could bring suit to enjoin the unauthorized practice of law, "performing the public function of prosecuting the violators." 22 N.J. at 196. In reaching this conclusion the court reasoned that
* * * the fact that no property or pecuniary interest is involved is no defense to a suit to enjoin the practice of a profession where the action is on the behalf of the public, ... or where the plaintiff is capable and competent to protect the public interest.... [at 194-195, citing, e.g., North Amer. Ins. Co. v. Yates, 214 Ill. 272, 73 N.E. 423 (Sup. Ct. 1905); State ex rel. Jackson v. Lindsay, 85 Kan. 79, 116 P. 207 (Sup. Ct. 1911)]
This reasoning is applicable to the instant action. Both the State and the City of Hoboken have expressed the public policy of preserving and restoring historical sites in Hoboken. The Committee is comprised of residents and taxpayers of Hoboken who are dedicated to the enforcement of this public policy. The Committee represents the *267 common grievances of its member taxpayers and citizens who would individually have standing. See Crescent Park Tenants Ass'n v. Realty Equities Corp., supra, 58 N.J. at 109. Given the wide recognition by our state courts to suits by associations and the fact that the Committee is seeking to promote the public interest, I find that the Committee also has standing to bring this suit. See also, Dempsey v. Boys' Club of City of St. Louis, Inc., 558 S.W.2d 262, 263 (Mo. App. 1977) (plaintiffs, who were residents of historic district and officers of a voluntary organization established to encourage restoration of historic buildings, allowed to bring suit challenging issuance of a permit to demolish a historic building).

Cause of Action
The next issue to consider is whether plaintiffs have stated a cause of action upon which relief may be granted. They are seeking to enjoin the demolition of the Mission building pending action by the federal, state and municipal authorities which might preserve this historic site.
Within the past decade legislatures and courts have been increasingly concerned with the preservation of our nation's historical sites. See generally Morrison, Historic Preservation Law (1965); Comment, "Legal Methods of Historic Preservation," 19 Buffalo L. Rev. 611 (1970). Historic preservation is achieved through a variety of methods: (1) architectural regulation, see Maher v. City of New Orleans, 371 F. Supp. 653, 655, 661 (E.D. La. 1974) (and cases cited therein), aff'd 516 F.2d 1051 (5 Cir.1975), cert. den. 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); see generally, Comment, "Architectural Control Justified on the Basis of Property Value Protection," 1971 Wash. U.L.Q. 118; (2) landmark designation, see Penn Central Transport Co. v. City of New York, supra, 42 N.Y.2d at 327, 397 N.Y.S.2d at 915-916, 366 N.E.2d at 1273-1274; Lutheran Church in America v. City of New York, supra, *268 35 N.Y.2d at 123, 359 N.Y.S.2d at 10, 316 N.E.2d at 307; see generally, Wolf, "The Landmark Problem in New York," 22 Intramural L. Rev. of N.Y.U. 99 (1962), and (3) historic district designation or zoning, see, e.g., Rebman v. City of Springfield, 111 Ill. App.2d 430, 432-433 250 N.E.2d 282, 283-284 (Sup. Ct. 1969); Opinion of Justices to Senate, 333 Mass. 783, 128 N.E.2d 563, 565-567 (Sup. Jud. Ct. 1955); Dempsey v. Boys' Club of City of St. Louis, Inc., supra, 558 S.W.2d at 263; Lafayette Park Baptist Church v. Scott, 553 S.W.2d 856, 859 (Mo. App. 1977); see also, Costonis, "The Chicago Plan: Incentive Zoning and the Preservation of Urban Landmarks," 85 Harv. L. Rev. 574 (1972).
The constitutionality of the application of these various types of historic preservation regulations have been upheld by several courts. See, e.g., Maher v. City of New Orleans, supra, 371 F. Supp. at 661-664; M & N Enterprises, Inc. v. City of Springfield, 111 Ill. App.2d 444, 448, 250 N.E.2d 289, 292 (App. Ct. 1969); First Presb. Church of York v. City Council of York, supra, 360 A.2d at 261. But see Lutheran Church in America v. City of New York, supra, 35 N.Y.2d at 130-132, 359 N.Y.S.2d at 15-17, 316 N.E.2d at 310-312. Furthermore, within the past two weeks the United States Supreme Court upheld the constitutional validity of the Landmark Preservation Law of New York in Penn Central Transport. Co. v. City of New York, ___ U.S. ___, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), aff'g 42 N.Y.2d 324, 397 N.Y.S.2d 914, 366 N.E.2d 1271 (Ct. App. 1977) See Huxtable, "A `Landmark' Decision on Landmarks," N.Y. Times, July 9, 1978, § 2 at 21. For a discussion of the constitutional implications of these types of land use regulations, see, e.g., Marcus, "Mandatory Development Rights Transfer and the Taking Clause: The Case of Manhattan's Tudor City Parks," 24 Buffalo L. Rev. 77 (1975); Note, "The Police Power, Eminent Domain, and the Preservation of Historic Property," 63 Colum. L. *269 Rev. 708 (1963); Comment, "Landmark Preservation Laws; Compensation for Temporary Taking," 35 U. Chi. L. Rev. 362 (1968).
In this case we have two forms of historic preservation regulation. N.J.S.A. 13:1B-15.128 through 13:1B-15.132 constitutes a type of landmark regulation providing for the designation of "areas, sites, structures and objects * * * determined to have significant historical, archeological, architectural or cultural value." N.J.S.A. 13:1B-15.128. The Hoboken ordinance provides for historic district designation. The provisions of both of these laws must be examined in order to determine whether plaintiffs have stated a cause of action.
Pursuant to the state law, the Commissioner of Environmental Protection, with the advice and recommendations of the Historic Sites Council, has established criteria for the nomination and approval of historic places. N.J.S.A. 13:1B-15.129. Nominations may be made by any party, and the State Review Committee[6] reviews the nominations and determines whether the proposed site has significant historical, archeological, architectural or cultural value. Once a site is recommended by the State Review Committee and then is approved by the Commissioner of Environmental Protection for inclusion in the New Jersey Register of Historic Places, the owner thereof is provided with written notification of this action. N.J.S.A. 13:1B-15.129.
Approval of a site as an historic place of this State results in automatic nomination of that site for the National Register of Historic Places. Federal approval of the site as a place of national historical significance may result in the granting of federal monies on a matching fund basis. Certain federal tax exemptions also become applicable. Plaintiffs are requesting the restraint of the demolition in *270 anticipation of the receipt of these funds and a possible purchase by plaintiffs of the Mission building.
Testimony before the court revealed that receipt of federal funding is highly speculative. Furthermore, nothing in this statute entitled plaintiffs or even the State to force an owner to sell an historic site. Thus, on this ground there is no basis for restraining the demolition of the Mission building pending possible federal approval of this building as a national historic site.
The question then arises as to whether any further state action may be taken under the statute which might justify restraining the demolition of the Mission building. As previously noted, this law provides certain protections for state historic sites. N.J.S.A. 13:1B-15.131 states in pertinent part:
The State, a county, municipality or an agency or instrumentality of any thereof shall not undertake any project which will encroach upon, damage or destroy any area, site, structure or object included in the Register of Historic Places without application to, and prior written authorization or consent of the Commissioner of Environmental Protection. [Emphasis supplied]
The prohibitions in this section apply strictly to actions on the part of the State, county or municipality. No attempt is made to regulate or restrict the rights of the property owners.[7] Therefore, no pending state action is permissible or possible with respect to the Mission itself.
But could the State object to the action of the City of Hoboken in issuing the demolition permit in question? The answer to this depends upon whether the issuance of a demolition permit constitutes a project undertaken by a municipality within the meaning of N.J.S.A. 13:1B-15.131. The court looks to the interim regulations promulgated *271 by the Commissioner of Environmental Protection for guidance. In the regulations the phrase "undertake any project" is construed to include only active participation on the part of a municipality rather than administrative functions. Among the examples of administrative action is the issuance of a building permit. A permit to demolish is a form of building permit issued by the building inspector of a municipality. Thus, under these interim regulations and the administrative practice, the issuance of a demolition permit would not constitute a prohibited municipal project under N.J.S.A. 13:1B-15.131.
Interpretative regulations and practices of administrative agencies or others charged with the duty of administering and enforcing a statute are entitled to a great weight by the court, see In re Application of Saddle River, 71 N.J. 14, 24 (1976); State v. Le Vien, 44 N.J. 323, 330 n. 5 (1965), especially where it appears to be supported by valid reasons, see Safeway Trails, Inc. v. Furman, 41 N.J. 467, 483-484 (1964), app. dism. and cert. den. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed. 2d 84 (1964). The Commissioner's interpretation of municipal projects under N.J.S.A. 13: 1B-15.131 appears to be valid because it protects against possible invasion of property owners' rights (i.e., by denial of a demolition permit) which is clearly not authorized by the statute. This court adopts the Commissioner's interpretation of N.J.S.A. 13:1B-15.131 as far as it concerns the municipality's issuance of a demolition permit.
My review of N.J.S.A. 13:1B-15.128 through 13:1B-15.132 reveals that no further action could be taken by the State with respect to this historic site. Accordingly, there is no reason to restrain the demolition of the Mission building in anticipation of some action by the State.
The last point to be considered is whether under the recently enacted Hoboken ordinance the City of Hoboken might take an action with respect to the Mission building which would justify the restraint requested by plaintiffs. As noted earlier in this opinion, the Hoboken ordinance does *272 provide for the promulgation of rules and regulations which would restrict the demolition of a building within a designated historic district. However, this law also sets forth certain exemptions, among them that
* * * [n]othing in this ordinance shall be construed * * * to prevent the construction, reconstruction, alteration or demolition of any such feature under a permit issued by the Building Inspector prior to the effective date of establishment of such historic district or historical landmark. [Hoboken ordinance § 1-7(a); emphasis supplied]
In this case the Hoboken building inspector issued the demolition permit to the Mission prior to the passage of this ordinance. Clearly, the Mission building or its demolition does not come within the purview of the protection afforded by the Hoboken ordinance. No further municipal action can thus be expected with respect to the Mission building and no ground under this ordinance exists for the issuance of a restraint.
Plaintiffs have demanded a restraint of the demolition of the Mission building in order to safeguard it pending some federal, state or municipal action which allegedly would provide for the preservation of this building. As can be seen, none of these branches of government can under the laws in question take any further action with respect to this historical site other than some possible funding. Plaintiffs' claim is without any basis in law and accordingly should be dismissed.
In light of this ruling the court will not decide whether a restraint could have been granted if there were pending some federal, state or municipal action which would have prevented the destruction of an historic site. Furthermore, since defendants may now demolish the Mission building, the issue of whether enforcement of the state and municipal laws in question would constitute a taking in violation of a property owner's constitutional rights is left for another day.
*273 The complaint shall be dismissed and the restraints heretofore issued will be dissolved upon the signing of an appropriate order.
NOTES
[1] Several million dollars have been obtained for the Erie-Lackawanna terminal project.
[2] The original complaint was not verified in accordance with R. 1:6-6 and R. 4:67-2(a) because plaintiff did not swear that the allegations were true based upon personal knowledge, see Patrolman's Benerolent Ass'n v. Montclair, 70 N.J. 130, 133-134, n. 1 (1976); Lippman v. Hydro-Space Technology, Inc., 77 N.J. Super. 497, 504 (App. Div. 1962), and because certain operative facts were based merely "upon information and belief," see Smithey v. Johnson Motor Lines, 140 N.J. Super. 202, 206 (App. Div. 1976). The court therefore heard the live testimony of Helen Manogue in support of plaintiffs' request.
[3] The original complaint included a request to restrain defendant James Caufield, the building inspector of Hoboken, from issuing a demolition permit. This relief was rendered moot by the issuance of the permit prior to the filing of the complaint, and plaintiffs' pleadings were amended accordingly.

The amended verified complaint was filed on May 9, 1978. It deleted the names of four other defendants  Singer Brothers Shop Rite, Inc., The Society for the Care of German Seamen in the Port of New York, Lutheran Emigrants House Association of New York and Association for the Relief of Indigent Germans. The latter three, allegedly owners of the Mission building, had been consolidated on March 13, 1974 into The German Seaman's Mission of New York. Singer Brothers Shop Rite, Inc. was mistakenly listed as a prospective purchaser of the Mission building.
[4] Although the Historic District Commission is authorized to promulgate such rules and regulations "within sixty days after [it] is appointed," Hoboken ordinance § 1-5(a), the Commission will not be appointed until "30 days after the effective date of this ordinance." Id. § 1-4(a). Thus, no regulations or rules currently exist.
[5] Note that the New Jersey Constitution does not have the "case or controversy" provision which exists in the Federal Constitution. Compare U.S. Const., Art. III, § 2, with N.J. Const. (1947), Art. VI, § 1; see Crescent Park Tenants Ass'n v. Realty Equities Corp., supra, 58 N.J. at 107.
[6] This Committee is a body of professionals, including an architect, an historian, an archeologist and others organized in accordance with federal regulations.
[7] It is noted that the interim regulations promulgated by the Commissioner of Environmental Protection also do not place any restrictions upon the owner of a state historic site.